MATTHIAS H. ARNOT, as Trustee, Respondent, v. UNION SALT
COMPANY, Appellant.

1. APPEAL — AFFIRMANCE OF JUDGMENT BY APPELLATE DIVISION —
WHEN COURT OF APPEALS MAY REVERSE ORDER AFFIRMING JUDGMENT
UPON EXCEPTIONS TO REFUSAL OF TRIAL COURT TO MAKE SPECIFIC
FINDINGS OF FACT. Where the affirmance of a judgment of foreclosure
by the Appellate Division is not unanimous, exceptions to refusals of the
trial court to make certain findings of fact as requested by appellant may
be considered by the Court of Appeals, and where the proposed findings
are sustained by uncontradicted evidence, and the facts embodied therein
are sufficient to relieve the appellant from liability, the judgment should
be reversed and a new trial granted.

2. MORTGAGE FORECLOSURE — WHAT CONSTITUTES WAIVER OF PAY-
MENT OF INTEREST ON CORPORATE BONDS — WHEN SUCH WAIVER PRE-
CLUDES ACTION TO FORECLOSE TRUST MORTGAGE FOR NON-PAYMENT OF
INTEREST ON BONDS. Where it appears from uncontradicted evidence,
upon the trial of an action to foreclose a trust mortgage given to secure
the payment of the bonds of a domestic corporation and the interest
thereon, that the holder of a majority of the bonds in value had consented,
either before or when the time for the payment of the interest coupons
arrived, to extend the time of such payment for a period which was not
definitely fixed, such bondholder thereby waived strict payment of the
interest, and is thereby precluded from insisting that a default had
occurred under a clause in the mortgage providing that in case of any
default in the payment of interest upon the bonds, or any of them, and
the continuance of such default for six months, and if the holders of one-
half in value of the outstanding bonds shall so elect and notify the
trustee in writing of such election, the whole of such bonds shall become
immediately due and payable, although the period limited in the bonds
for the payment thereof shall not have expired; such waiver consti-
tutes an insuperable obstacle to the maintenance of an action to foreclose
the mortgage securing such bonds upon the demand of the bondholder
making such waiver.

*Arnot* v. *Union Salt Co.*, 109 App. Div. 433, reversed.

(Argued December 6, 1906; decided December 21, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 21, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alton B. Parker, O. P. Hurd* and *Philip P. Safford* for appellant. The Appellate Division erred in holding that, assuming that the coupons were not presented, the mere non-payment of the coupons during the six months constituted a default. (*Matter of Young*, L. R. [31 Ch. Div.] 174; *H. V. R. R. Co.*, v. *O'Connor*, 95 App. Div. 6; *McClelland* v. *N. S. Ry. Co.*, 110 N. Y. 469; *P. M. Co.* v. *Evans*, 84 Va. 717; *Davis* v. *N. Y. C. Co.*, 41 Hun, 492; *A. T. Co.* v. *C. W. Co.*, 72 App. Div. 539; *Albert* v. *G. I. Co.*, L. R. [3 Q. B.] 123; *U. T. Co.* v. *S. L., etc., Co.*, 5 Dill. 22; *De Groot* v. *McCotter*, 19 N. J. Eq. 531; *Cole* v. *Hines*, 81 Md. 476.) Even if plaintiff had presented his coupons he could not now be heard to claim a default, because he is estopped from so doing and he has waived any such claim. (*French* v. *Row*, 77 Hun, 380; *Levey* v. *U. P. Works*, 34 N. Y. 900; 124 N. Y. 664; *Broderick* v. *Smith*, 26 Barb. 539; *Ferris* v. *Ferris*, 28 Barb. 29; *Dwight* v. *Webster*, 32 Barb. 47; *Trenor* v. *Le Count*, 84 Hun, 426; *Weber* v. *Huerstel*, 11 Misc. Rep. 214; *Olmstead* v. *Wehle*, 18 Wkly. Dig. 486; *Hause* v. *Eisenlord*, 17 Wkly. Dig. 203; *Hunt* v. *Keech*, 3 Abb. Pr. 204.)

*Frederick Collin* for respondent. Clear and uncontradicted evidence sustains the findings of the trial court. (*M. Bank* v. *Elderkin*, 25 N. Y. 178; *F. Nat. Bank* v. *Crittenden*, 2 T. & C. 118; *Bank of Syracuse* v. *Hollister*, 17 N. Y. 46; *Nichols* v. *Goldsmith*, 7 Wend. 160; *Bank of U. S.* v. *Corneal*, 2 Pet. 543; *Gillett* v. *Averill*, 5 Den. 85; *Bailey* v. *Porter*, 12 M. & W. 44; 1 Daniel on Neg. Inst. [4th ed.]

§§ 656, 657; *Townsend* v. *Bell,* 167 N. Y. 462; *Dickerson* v. *Wason,* 47 N. Y. 439; *N. B. & D. Bank* v. *Hubbell,* 117 N. Y. 384.) The court properly refused to find that Arnot waived performance by defendant of its promise to pay the interest on July 1, 1904, or that he waived the default arising from defendant's failure to pay as promised and is estopped from taking advantage of such default. (*Le Gendre* v. *S. U. & N. Ins. Co.,* 183 N Y. 392; *Sweet* v. *Henry,* 175 N. Y. 268; *S. B. I. Co.* v. *Merrill,* 108 Cal. 490; *Ripley* v. *Ins. Co.,* 30 N. Y. 136, 164; *Crandall* v. *Morton,* 24 App. Div. 547; *Armstrong* v. *A. Ins. Co.,* 130 N. Y. 560; *Decker* v. *Sexton,* 19 Misc. Rep. 59; *Sullivan* v. *P. Ins. Co.,* 172 N. Y. 482; *Libby* v. *Haley,* 91 Me. 331; *Shaw* v. *Spencer,* 100 Mass. 382.) The plaintiff's right to institute and prosecute this action to a judgment of foreclosure and sale was clear and beyond doubt. (*Malcolm* v. *Allen,* 49 N. Y. 448; *Bennett* v. *Stevenson,* 53 N. Y. 508; *Ferris* v. *Ferris,* 28 Barb. 29; *Reubens* v. *Prindle,* 44 Barb. 336; Jones on Mortgages, §§ 76, 1180, 1181, 1182; *Hale, Receiver,* v. *Gouverneur,* 4 Edw. Ch. 207; *Crane* v. *Ward,* Clarke's Ch. 393; *Rosche* v. *Kosmrowski,* 61 App. Div. 23; *Curran* v. *Houston,* 201 Ill. 442; *O'Connor* v. *Shipman,* 48 How. Pr. 126; *Valentine* v. *Van Wagner,* 37 Barb. 60.)

WILLARD BARTLETT, J.   This is a suit to foreclose a mortgage made by the defendant corporation to the plaintiff as trustee to secure the payment of 200 bonds of the par value of $500.00 each, and the coupons attached to the same representing interest payable thereon annually at the rate of five per cent per annum. The mortgage contains a provision that in case of any default by the Union Salt Co. in the payment of interest upon said bonds or any of them and the continuance of such default for six months "if the holders of one-half in value of the then outstanding bonds hereby intended to be secured shall so elect and notify the trustee in writing of such election the whole of the principal of all the bonds then outstanding shall forthwith

be declared by the trustee to be and shall immediately become due and payable, although the period limited in said bonds for the payment thereof shall not then have expired."

For some time prior to July 1, 1904, Matthias H. Arnot was the owner of 115 out of the 200 bonds of the Union Salt Co. of the par value of $57,500.   In June, 1904, his private secretary, Mr. Edward J. Dunn, cut from these bonds the coupons which were due on the ensuing 1st of July, and which were payable at the office of the Chemung Canal Trust Co. in the city of Elmira.   On June 27, 1904, Mr. Dunn deposited these coupons with the Chemung Canal Trust Co. to the credit of Mr. Arnot.   Although the Union Salt Co. had at the time on deposit with the Chemung Canal Trust Co. $539.75 which might have been applied in part payment of Mr. Arnot's coupons, none of the coupons was paid ; and on the 9th day of July, 1904, Mr. Arnot gave to the Chemung Canal Trust Co. a check to repay that institution for the credit which it had given to him on account of the coupons.   Upon the delivery of this check to the receiving teller, he gave the coupons back to Mr. Dunn, who then replaced them among Mr. Arnot's securities.

Treating this transaction as a proper presentation of the coupons and a demand for payment thereof, upon which the Union Salt Co. had made default, Mr. Arnot on January 9, 1905, being then the holder of more than one-half in value of the then outstanding bonds of the Union Salt Co., served upon himself as trustee under the mortgage a notice that he elected to declare the whole of the principal of all of the bonds of said corporation then outstanding to be forthwith due and payable, and a request that the trustee should declare said principal to be forthwith due and payable, although the period limited in said bonds for the payment thereof had not expired ; in pursuance of which request the trustee did, on the same date, declare the whole of the principal of all the bonds aforesaid to be immediately due and payable.   On the basis of this action under what may be termed the acceleration clause of the mortgage the present foreclosure suit was insti-

tuted and has been successfully carried to judgment. That judgment has been affirmed by the Appellate Division, but its order does not show the affirmance to have been unanimous.

In this court the right of the plaintiff to a foreclosure of the mortgage under the acceleration clause is disputed on two grounds: *First*, on the ground that there is no evidence whatever to sustain the finding of the trial court to the effect that Mr. Arnot's coupons were so presented as to render their non-payment by the Chemung Canal Trust Co. a default on the part of the Union Salt Co. within the terms of the mortgage; and *secondly*, on the ground that the trial court should have found that, as requested by the defendant and established by uncontroverted evidence, Mr. Arnot acquiesced in an agreement which was entered into prior to July 1st, 1904, by all the other directors of the defendant corporation that they should all indefinitely delay the presentation for payment of their coupons payable on their face on July 1, 1904.

In the view which I take of the case it is necessary to consider only the second point.

In reference to this alleged agreement of forbearance or waiver the learned trial judge made the following finding of fact at the request of the defendant:

" 10. That prior to July 1, 1904, all of defendant's directors, except plaintiff, viz., E. P. S. Wright, P. Halsey Hawes, Geo. S. Coon and Everett E. Buchanan, mutually agreed to withhold for an indefinite time presentation for payment of the coupons payable on their face July 1, 1904, attached to the bonds held by them respectively, which were a part of the issue of bonds set forth in the complaint herein."

The defendant further requested the court to make three additional findings of fact on this subject, all of which were refused, the defendant excepting in each instance to the refusal. These proposed additional findings are in the following words:

" 11. That plaintiff was not present when said agreement was made, but that the same was made by all the other directors of defendant with the expectation that plaintiff would,

upon being apprised thereof by said Buchanan, consent to withhold in like manner presentation for payment of his (plaintiff's) coupons payable on their face July 1, 1904, attached to the bonds of said issue held by plaintiff."

"12. That said Wright, Hawes and Coon made said agreement in reliance upon said Buchanan's promise to see plaintiff at once and notify said Wright, Hawes and Coon in case plaintiff should decline to acquiesce therein."

"13. That plaintiff thereafter did acquiesce in said agreement."

Inasmuch as the affirmance by the Appellate Division was not unanimous, the exception to the refusals to find as requested are available to the appellant in this court (*Le Gendre* v. *Scottish U. & N. Ins. Co.*, 183 N. Y. 392), and where it appears, as I think it does here, that the proposed findings are sustained by uncontradicted evidence, and that the facts which they embody suffice to relieve the appellant of liability, such exceptions of course demand a reversal of the judgment.

Three witnesses were called to testify in regard to the agreement mentioned in the 10th proposed finding: Mr. E. P. S. Wright, the president of the defendant corporation, Mr. P. Halsey Hawes, its secretary and treasurer, and Mr. E. E. Buchanan, a director. The agreement was made at the annual meeting of the stockholders of the Union Salt Co., which was held at Watkins, N. Y., on June 28, 1904. All the directors were present with the exception of Mr. Arnot, who was the vice-president. Being asked to state what was said at that meeting as to the coupons payable July 1, 1904, Mr. Wright testified: "Mr. Hawes said it would be difficult for the company to pay the bond interest at the present time due July 1, 1904; I also made the same statement to the directors and I stated and Mr. Hawes stated that we thought that the company would begin to make more money, get money back and be able to pay the bond interest later on, possibly in the fall. I said and Mr. Hawes said and Mr. Coon said and Mr. Buchanan said it would be better for all to waive the bond interest, and all the directors, including Mr.

Arnot, to waive the bond interest for the present, as it would cut our working capital too small at the time, but to pay the few outstanding coupons, which amounted to a trifle, something like $200, but by mutual consent; that was what was stated; it was stated that by mutual consent we should do this." The witness being specifically interrogated as to what was said by those present in regard to the presentation of coupons due on the 1st of July, answered further: "They all agreed not to present their coupons. All the persons I have mentioned said at that meeting that they would not present their coupons for payment July 1st, 1904." At that time the witness and his wife owned bonds of the Union Salt Co. to the amount of $4,500 par value upon which none of the coupons has ever been presented for payment.

It further appears from the testimony of Mr. Hawes that at the same meeting Mr. Buchanan, who had been made a director at the instance of Mr. Arnot and was an intimate personal acquaintance, said he would see Mr. Arnot and that he believed it would be satisfactory to Mr. Arnot to join with the rest of the directors in the arrangement and that he would let them know if there was any objection on Mr. Arnot's part. Neither the witness nor any other officer or director of the Union Salt Co., so far as he knew, had ever received any notice from Mr. Buchanan or from any one expressing any dissatisfaction by Mr. Arnot with the arrangement.

Mr. Hawes, the secretary and treasurer of the defendant corporation, was present in court and heard Mr. Wright's testimony as to who was present at the meeting and what was said there and he declared that Mr. Wright's statements were substantially correct and that he could not recall any matter in which his recollection varied from that of Mr. Wright. Mr. Arnot was not called as a witness at all; and the narrative of Mr. Hawes as to what occurred at the annual meeting is undisputed. The evidence thus clearly establishes the making of an agreement on the part of all the directors except Mr. Arnot that they would withhold the presentation of their coupons for the present until the financial condition of the

defendant corporation should be more favorable and an under-taking on the part of Mr. Buchanan to endeavor to procure the assent of Mr. Arnot to this agreement and to inform his fellow-directors in case he should not succeed in doing so. Let us now inquire what the proof shows in regard to Mr. Arnot's attitude upon being informed of the agreement.

Mr. Buchanan testified that he told Mr. Arnot of the meeting in Watkins; that there was no money in the bank to pay the coupons and that Mr. Wright and Mr. Hawes wanted his permission to delay the payment of the coupons. In response to this information Mr. Arnot " talked about the condition of the affairs, what was done at the meeting and stated that they had made a good many promises to him that had not been ful-filled." According to Mr. Buchanan, "That was all that was said in regard to the coupons, that they had failed to keep their promises, and that he didn't think they would keep this promise, and that was all that was said about the coupons." The statements of this witness in regard to what was said by Mr. Arnot indicate that he was not disposed to place much reliance upon any assurances of increased corporate prosperity in the future, but in the language attributed to him on this occasion there is no clear manifestation of a refusal on his part to act with the other directors in withholding the demand upon the coupons. Other evidence in the case makes it quite plain, not only that there was no refusal by Mr. Arnot, but that he deliberately acquiesced in the agreement formulated by the other directors at the annual meeting at Watkins. Mr. Hawes describes a subsequent meeting of directors at which Mr. Arnot was present when there was a discussion concerning the coupons payable on July 1, 1904. The fol-lowing extract from the testimony given by Mr. Hawes con-cerning this meeting shows that Mr. Arnot then recognized the existence of the agreement of forbearance and felt that he was bound by it.

" Q. State what Mr. Arnot said ?   A. He said he noticed that some coupons had been paid July 1st, and asked why it

was; that he thought we were all to wait for our interest, or words to that effect."

"Q. And what was said in reply to that question? A. I explained to Mr. Arnot that at the meeting, the stockholders' meeting at which this agreement had been made, that we had decided it would be better to pay the few outstanding coupons in order to prevent any talk from outsiders, and that only the directors were to withhold their presentation; that amounted to so little it was hardly worth while to hold them out, and with that explanation he seemed satisfied."

"Q. Did Mr. Arnot make any further remark regarding these July, 1904, coupons after you had made that explanation to him? A. No, sir."

Further evidence of Mr. Arnot's acquiescence, and, to my mind, the strongest of all, is to be found in his dealings in reference to his coupons with the Chemung Canal Trust Co. through his private secretary, Mr. Dunn. Mr. Arnot was himself the president of the trust company and, therefore, was presumably aware of the fact that the Union Salt Co. on July 1st, 1904, had upwards of $500 on deposit in that institution applicable so far as that sum would go to the payment of his coupons. Nevertheless, instead of insisting upon such payment he voluntarily withdraws his coupons nine days after they were due and payable and proceeds to repay to the trust company the amount of the interest which had been credited to him on account thereof. This was the most practical manifestation possible of his intention to join with the other directors in waiting for payment until a season which should be more convenient for the Union Salt Co. That he had not until long thereafter any intention of claiming a default by reason of the non-payment of the coupons is apparent from a letter to Mr. Hawes, the defendant's secretary and treasurer, which is dated January 4th, 1905, and in which he says: " I am holding coupons cut from Union Salt Co. bonds which fell due Jan. 1st, 1905, and also July 1st, 1904, and they are at the present time unpaid. I should like to know what provision is being made to pay them?" It is hardly conceivable

that such an inquiry as this would be made by a bondholder
who supposed that the right to elect to declare due the whole
of the principal sum secured by the mortgage had already
accrued in his behalf.

The findings which the defendant requested and to which
it was entitled upon the uncontradicted evidence on the sub-
ject lead unquestionably to the conclusion that upon this record
the defense of waiver was established, that is to say, that Mr.
Arnot as a holder of the majority of the bonds in value had
consented either before or when the time for the payment of
the coupons arrived to extend the time of such payment
for a period which was not definitely fixed.   Hence, there
could be no default under the mortgage which would set
running the term of six months, at the expiration of which
the right would accrue to elect to declare the principal sum
due.   In the case of *Albert* v. *Grosvenor Investment Com-
pany* (L. R. [3 Q. B.] 123) the court had under consideration
a bill of sale which provided that if the mortgagor should
make "default" in payment of the sum of £62 10s. or any
part thereof the whole amount should then be immediately
due and payable; and Cockburn, C. J., defined the term
default to mean the non-payment by the party bound to pay
without the consent of the parties having a right to waive the
payment.   "I see nothing," he said, "which goes to show
that if by the consent of the person who is to receive pay-
ment the time for payment is extended, the omission to pay
within the time specified must be a default within the mean-
ing of the word in the bill of sale, and it would be monstrous
to hold that it was a default, for the mortgagee might always
lead the mortgagor into a snare by consenting that the time
for payment should be extended and then come down upon
him by insisting that there had been a default."   A waiver
of strict payment by extending the time in which it may be
made is inconsistent with a claim that there has been a default
which entitles a mortgagee to proceed under an acceleration
clause in a bond and mortgage.   "If the complainant has
given further day of payment, or in any other way waived the

payment according to the letter of the bond, the default contemplated and provided against has not happened." (*De Groot* v. *McCotter*, 19 N. J. Eq. 531.) Where a party entitled to enforce payment under a contract has consented to postpone the time of such payment, and the other party has acted upon such consent and in reliance thereon has permitted the contract time to pass without payment, the creditor may not treat the failure to pay within the time originally specified as a breach of the contract. (*Thomson* v. *Poor*, 147 N. Y. 402, 409.) No new consideration is required to support a waiver of payment upon a specified date (*Toplitz* v. *Bauer*, 161 N. Y. 325, 333), and the party who has thus waived strict payment cannot consider the other party in default unless he gives notice that he has withdrawn his waiver before the time for payment has arrived. (*Thomson* v. *Poor*, *supra*.) If the time for payment has been extended by the consent of the creditor, but no certain time is fixed for payment, the creditor cannot thereafter insist upon immediate payment under penalty of a forfeiture of the contract, but the debtor is entitled to a reasonable time after notice within which to perform.

To entitle the plaintiff to maintain this action it was essential to establish the fact that a default had occurred in the payment of the coupons which he owned as a bondholder on July 1, 1904; his acquiesence in the agreement made by his fellow-directors at the annual meeting of the Union Salt Co. amounted to a waiver of strict payment, which precluded him from insisting that a default had occurred at that time; and this waiver constituted an insuperable obstacle to the maintenance of the present action upon the proof contained in this record.

The judgment should be reversed and a new trial granted, costs to abide the final award of costs.

Cullen, Ch. J., O'Brien, Edward T. Bartlett, Haight and Vann, JJ., concur; Chase, J., not sitting.

Judgment reversed, etc.