MUTUAL BENEFIT LIFE-INSURANCE CO. *v.* COMMISSIONER
OF INSURANCE.

LIFE INSURANCE—POLICIES—STATUTORY FORMS—AUTOMATIC PRE-
MIUM LOAN PROVISION.

> The so-called automatic premium loan provision of life-insur-
> ance policies, by which, upon application before or within
> the month of grace allowed for the payment of premiums,
> the insurer pays the premium and charges it against the pol-
> icy, and so continues until the interest of the assured in the
> policy is exhausted, does not conflict with the provision of
> the statute (subdivision 8, § 1, Act No. 187, Pub. Acts 1907)
> requiring policies to secure to the owner thereof, in the event
> of default of premium payments, a stipulated form of insur-
> ance, the net value of which shall be at least equal to the re-
> serve, etc., though, as compared with the values secured by
> the provisions conforming to the statute, those secured by
> the operation of the automatic premium loan provision are
> smaller, if, under one provision or the other, the interest of
> the insured in the policy is exhausted; since, by the terms of
> the act, when a premium is paid by the operation of the pre-
> mium loan provision, there is no default within the meaning
> of the statute, but, on the contrary, an election by the policy
> holder not to make default with its resulting consequences.

Mandamus by the Mutual Benefit Life-Insurance Com-
pany to compel James V. Barry, commissioner of insur-
ance, to withdraw his disapproval of certain policy forms.
Submitted February 27, 1908.  (Calendar No. 22,725.)
Writ granted March 17, 1908.

*Frank L. Sage*, for relator.

*John E. Bird*, Attorney General (*Arthur P. Hicks*,
of counsel), for respondent.

OSTRANDER, J.    Act No. 187, Pub. Acts 1907, is enti-
tled: "An act establishing standard provisions and con-
ditions to be contained in policies of life insurance issued
by companies licensed to do business in this State."    By

section 1 of the act it is provided that no policy of life insurance shall be issued in this State unless the same shall contain twelve named provisions. By section 2 it is provided that no policy shall issue if it contain any of four named provisions. By section 4 the commissioner of insurance is given authority to disapprove the form of a policy filed with him, his action being "subject to review by any court of competent jurisdiction." Relator filed its forms of policies with the commissioner, who refused to approve them for the reason that they contain what is called, and will be herein called, "an automatic premium loan provision," which it is claimed is obnoxious to subdivision 8 of section 1 of the statute. That reads: (The policy shall contain)

"*Eighth.* A provision which, in event of default in premium payments, after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per centum of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance as aforesaid and may stipulate that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurances of twenty years or less."

It is conceded that relator's policies contain the provisions required by the 8th subdivision of section 1 of the act. It goes without saying that if a policy holder pays premiums according to his contract he secures the contract benefit. We shall better understand the effects of nonpayment of premiums if we resort at once to the

policy provisions. If the insured does not pay his premium on the due day, he may pay it within one month. If he dies within the month without having paid, the policy is in force and the indemnity provided therein, less the past-due premium, is secured. If he does not pay on the due day and does not pay or die within the month of grace, he may, within the same time, (1) surrender the policy for its cash surrender value, (2) surrender it and receive in exchange a paid-up policy, (3) if he does not surrender the policy, the insurance will be automatically extended from date of default in premium payments, without any action by the owner of the policy. If the policy is extended under the above provision 3 it may at any time during its life, upon payment of all arrears and interest, be reinstated "upon evidence of insurability satisfactory to the company."

The automatic premium loan provision of the policy is found under the head "Reinstatement." With the context it reads:

"In event of default in premium payments, the arrears may be paid within one month, or, if not so paid and the insured shall die within the said month, this policy will be regarded as being then in force, and the arrears will be deducted in the settlement hereof; *or, if requested by the insured prior to or within the said month, the arrears will be charged as an indebtedness against this policy, bearing interest at a rate not exceeding six per centum per annum, provided the entire indebtedness then outstanding shall be within the limit secured by the cash surrender value;* or this policy may be reinstated at any time after the said month, upon evidence of insurability satisfactory to the company and payment of all arrears with interest thereon at not to exceed six per centum per annum: *Provided,* in any case, the policy has not been surrendered to the company."

It is the second clause of this provision, which I have italicized, to which objections are made. Those objections as stated by the respondent are:

"*First.* Because such provision in effect negatives the

very thing that was intended to be saved to the policy holder by subdivision 8 of section 1 of Act No. 187 of the Public Acts of 1907, in this, that under the clause as contained in your policy you can deprive the insured of the stipulated form of insurance provided by the statute except such as can be purchased with a reserve that is insufficient to pay a single quarterly premium.

" *Second.* Because I do not believe that when the legislature prescribed subdivision 8 of section 1 of the standard provisions law above referred to as a necessary part of every insurance policy, it intended that a clause of such a nature as the one you propose should be permitted to be placed in the policy and the insured thus prevented from obtaining what the law in clear terms says he is entitled to.

" *Third.* Because I do not believe the action of the automatic premium loan clause will secure to the assured under all circumstances, if at all, ' a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto,' etc.

" *Fourth.* Because when the insured allows his policy to lapse and is not reinstated, the net results of the proposed automatic premium loan provision to the insured are not such as would come within the requirements of subdivision 8 of section 1 of the standard provisions law."

It is conceded that, as compared with the values secured by the provisions conforming to the statute, those secured by the operation of the automatic premium loan provision are smaller, if, under one provision or the other, the interest of the insured in the policy is exhausted. If a policy holder were to choose, at a given date, to have his premiums paid by the relator instead of electing to have his policy extended, the result, if no premiums were thereafter paid by him, would be that his insurance would sooner terminate. To use language employed in the brief for relator, it has never denied—

" That if the insured intended to pay no more premiums, the automatic extended insurance, then and now provided for by relator's policy, was more valuable to the insured than to have his premiums charged against the policy as a loan so long as the policy will permit such action to be taken."

It appears, indeed, that relator protested to the authorities of the State of Wisconsin that such a provision, operating without the election of the insured, should not be made an obligatory provision in policies.

The automatic premium loan provision is not, in fact, automatic. Its effect is to open an account by the insured with the company, if he so desires, in which there will be charged against him, and his policy, the amounts necessary to pay the premiums and, eventually, interest upon such amounts. It is an account which can be closed and balanced at any time by payment of the sums so charged. The relation of the insured to the insurer remains otherwise unchanged. All of the nonforfeiture provisions of the policy are still available, including the one which finally postpones forfeiture, until one month's notice shall have been mailed to the last known address of the insured borrower and his assignee. This is a necessary conclusion and one with which we understand the counsel for the relator agrees. Payment of arrears does not result, in fact, in restoring or reinstating the insured to a lost or forfeited position. No new or further physical examination is required. In a sense, the insured borrows from the insurer sums equal to accruing annual premiums, securing payment with the policy.

As has been stated, if the insured determined to pay no more premiums and proposed to continue to be a policy holder as long as possible, he would be foolish if to that end he adopted the automatic premium loan method. But suppose that, intending to keep his policy in force, he finds himself unable to meet a particular premium or premiums, and does not desire to make a loan of the company under the stipulated loan provision in his policy; or, suppose his absence from home or his sickness. By exercising the option which is given him, he is protected, at the cost of the exacted interest, if his embarrassment is temporary, or his absence or sickness of short duration. There is, and there is not, in the supposed cases, a default in premium payments. There is default in that the in-

sured does not by payment of his premium in the ordinary way continue the simple relation of policy holder. There is no default in the sense that his contract of indemnity is immediately put at hazard and he required to avail himself, within one month, of one or other of the nonforfeiture provisions of the policy.

The statute does not provide for a standard form of policy. In this it is unlike Act No. 277, Pub. Acts 1905, Act No. 307, Pub. Acts 1907, which relate to fire insurance policies. The standard provisions and conditions of life-insurance policies, set out in the statute, are not strictly exclusive and inclusive of all permitted provisions and conditions. Some of the provisions in relator's policies are more liberal than the statute provisions. Section 5 of the act permits provisions required by the laws of other States, "anything in this act to the contrary notwithstanding." On the other hand, the requirement that certain provisions shall be and certain others shall not be incorporated in the policy requires us to say that no provisions should be inserted which have the effect of avoiding or nullifying the required provisions. We may, and perhaps should, go further and say that no provision may rightfully be used which shall, with or without action of the policy holder, materially change or avoid the statute scheme of the contract.

What the statute, and the contract in conformity therewith, secures to the policy holders who do not pay premiums on the due day has been set out. We need not further notice the one who pays within the month of grace. Those who do not pay must, actively or passively, submit to a changed relation. The one who surrenders his policy indicates that he cannot, or will not, make further payments. The one who does not surrender his policy may or may not have chosen to secure its value in extended insurance and may or may not have determined to pay no more premiums. But all submit to the statute, and the contract, consequences of default. Having complied with the statute mandates with respect to the conse-

quences of default, relator has, it contends, proposed to the policy holder, in the provision we are considering, a way of avoiding a default, and not an extrastatutory consequence of default; a method which, at his election, the policy holder may employ to avoid the statute consequences. The reply made is, in effect, that the policy holder is really in default if he adopts the proposed method of paying his premiums; that what is really offered to him is a stipulated form of insurance, following a default, of less value than the statute minimum. It is said that—

"It is the contention of the respondent that the automatic loan provision contained in relator's policy is one of the pitfalls contrived to trap the unwary and innocent policy holder and deprive him of values which the standard provisions law contemplates he shall receive in certain contingencies. At first blush it would appear that a provision in a policy by which the insurance company, in event of the failure of the insured to pay his annual premium, will pay his premiums out of the reserve on his policy as long as it is sufficient and deduct the premium so paid with compound interest at six per cent. from the final settlement on the policy, would at least be fair to the insured, if not the granting of a valuable privilege. It is only upon an analysis of the scheme and a comparison with the values and options which the statute requires the insurer to give that the hardship and injury to the insured appears.    *    *    *

"Such a clause makes it possible for the insured to urge the making of the request for the application of the automatic loan provision at the time of the issuance of the policy or even as a condition precedent to the issuance of a policy, and when once applied as shown by the comparisons made in respondent's Exhibit 1 and in the letter of relator's mathematician, always results in giving the insured a less net value than he would receive under any of the options contained in relator's policy, which are admitted to be within the law.    *    *    *

"Relator's automatic loan clause provides that the application for the loan may be made 'prior to or within said month' after 'default in premium payments.' As shown in respondent's answer it is the custom of insurance companies generally, and is charged to be the custom of

relator's company, to obtain the signature of the insured to the request for the premium loan at the time of taking the application for the policy, and under the terms of the clause as used by relator in its policy the application for the automatic premium loan may be made as a condition precedent to the issuance of a policy."

We do not understand how the purchaser of a life-insurance policy may be forced to make application for the automatic premium loan as a condition precedent to the issuing of the policy. We may assume that, without explanation, few policy holders would discover the difference between the statute life of a defaulted policy and the life of one continued in force by the automatic premium loan plan if its value was finally exhausted. It may be assumed, also, that to some policy holders the apparent advantages of the plan will seem to warrant a standing request to the company to pay the premium. That the statute is passed in the interest of policy holders and for their protection is not to be doubted. But it is also clear that beneficial results may follow the use of the contract option. There is nothing immoral in the relation proposed to be established by use of the option and nothing illegal unless the relation is forbidden by this statute. The consideration stated above, and others which are presented, have not convinced us that we should give the statute an effect beyond that imported by its terms. The ruling of the respondent is not an exercise of discretion. If it were, we should be very slow to interfere.

We are of opinion that by the terms of the act when a premium is paid by operation of the automatic premium loan provision, there is no default in premium payments within the meaning of subdivision 8 of section 1 of the statute. There is, on the contrary, an election by the policy holder not to make default, the result of which would be consequences or a consequence already stated. By the terms of the act, relator is not prohibited from offering and the policy holder is not prevented from exercising the option to which objection is made, the result of

such exercise not being in fact and not being intended as a stipulated form of insurance other than the original policy.

The writ will issue.

GRANT, C. J., and MOORE, CARPENTER, and McALVAY, JJ., concurred.