MINNIE M. BARTHEL, RESPONDENT, v. SOVEREIGN CAMP, WOODMEN OF THE WORLD, APPELLANT.—93 S. W. (2d) 285.

Kansas City Court of Appeals. January 6, 1936.

248

*Charles E. Hassett* and *E. H. Gamble* for respondent.

*Rainey T. Wells* and *Harding, Murphy & Tucker* for appellant.

BLAND, J.—This is an action upon a benefit certificate in the sum of $1000. The case was tried before the court, without the aid of a jury, resulting in a judgment in favor of plaintiff in the sum of $983.42. Defendant has appealed.

The facts show that defendant is a fraternal beneficiary association, organized under the laws of Nebraska; that on February 5, 1910, it issued to Clifford L. Johnson in this State, a benefit certificate in the sum of $1000, made payable to his sister; that on February 23, 1911, a new certificate, identical in terms as the old, except as to the beneficiary, was issued to Johnson in exchange for the old. The exchange of the certificates was for the purpose of naming Johnson's wife (now Minnie M. Barthel), the plaintiff herein, as beneficiary. These certificates were plain death benefit certificates with no provision for a cash surrender or loan value or for paid up or extended insurance. Insured paid the monthly assessments of $1.10 upon these certificates to the head camp. On October 1, 1917, the assessment rate was increased to $1.20 per month which insured thereafter paid.

After December 31, 1919, defendant, having theretofore amended its laws, increased the assessment to $3.30 per month. The certificates at that time provided for death, monument and old age disability benefits. However, under the provision of the amendment to the by-laws, insured was given the election to pay $1.20 per month as an assessment, which he chose to do, but, by doing so, he elected to have the monument and old age disability benefits cancelled and there was a lien charged against the certificate in the sum of $1.55 per month with interest thereon from and after December 31, 1919, at the rate of five per cent per annum, compounded annually, resulting, on March 6, 1929, of there being a lien against his certificate, on this account, in the sum of $242.06. The certificate provided that if the amount of the lien was not paid during the lifetime of the insured it should be charged against the policy at his death and be deducted from the amount payable to his beneficiary.

On March 6, 1929, the certificate then in existence was exchanged for a new certificate (the one in suit) in the sum of $1000, in which plaintiff was named beneficiary. The new certificate was a twenty-year payment life insurance policy having provisions for cash and loan values and paid-up and extended insurance. The monthly assessment provided for in the new policy was $4.33. Insured paid all of the required assessments on the new certificate to and including the month of August, 1930. However, he failed to pay any of the installments falling due thereafter and died on March 26, 1932.

The effect of the exchange of the policies in 1929 was to wipe out the old policy, cancel the old indebtedness constituting a lien on the old certificate and put the insurance on a new basis.

The application for the new certificate provided: "The new certificate is to become effective on the first day of March, 1929, and to' bear the date of March 1st, 1926, and age of 53. It is understood and agreed that withdrawal values, if any, on the new certificate will be available to me only after I have made payments on said new certificate for three full years from date thereof. First, payment on new certificate is for the month of March, 1929, and I warrant that all the required payments on my present certificate have been paid up to the first of the month for which said first payment is made. . . . Mo. Rate, at age of 53, $4.33." It is admitted that insured was not fifty-three years of age at the time he signed the application, but was fifty-six years old.

The policy provides for the payment of $4.33 per month upon the certificate "on or before the last day of each month," after the payment of the first month's installment, until two hundred forty payments covering twenty years had been made, or until the prior death of the member. It provides, on page one thereof, as follows: "Effective as to payment period, values and provisions as if issued on the first day of March, 1926. Issued at Omaha, Nebraska, this sixth day of March, 1929." On page two, the policy, under the heading "SPECIAL PROVISIONS AND CONDITIONS," provides as follows:

"1. *Mortality Standard:* The reserve under this Certificate, modified for one year preliminary terms, shall be computed on the American Experience Table of Mortality, with interest at 4 per cent per annum.

"2. *Cash Surrenders, Loan Value, Paid-up and Extended Insurance:* After thirty-six monthly payments on this certificate shall have been made should the member fail to pay any subsequent monthly payments, the member, within three months after due date of the monthly payment in default, but not later, upon written application and legal surrender of this certificate, may select one of the following nonforfeiture options:

"Option (a) The Cash Surrender Value set forth in Column 1 of Table A on page 2 hereof for the period to the end of which premiums have been paid in full.

"Option (b) A Paid-up Certificate for the amount set forth in Column 2 of Table A on page 3 hereof for the period to the end of which premiums have been paid in full.

"Option (c) Extended Insurance from such due date, for the amount of the death benefit on page 1 hereof, but without Total and Permanent Disability benefits, for the period specified in Column 3 of Table A on page 3 hereof, for the period to the end of which premiums have been paid in full.

"If there be any indebtedness against this certificate, the Cash Surrender Value set forth in Column 1 of Table A on page 3 hereof shall be reduced thereby, and the value of the options above named shall be decreased proportionately.

"3. *Automatic Premium Loan:* After thirty-six months payments on this certificate shall have been paid, *if any subsequent monthly payment be not paid on or before its due* date, and if the member has not, prior to such *due date,* selected one of the options available under the nonforfeiture provisions of this certificate, the Association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the Association, *equal the cash value hereof of the date of default in the payment of the monthly payments.* When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void; provided, that while this certificate is continued in force under this provision, the member may resume the payment of monthly payments without furnishing evidence of insurability, and the accumulated loans and interest thereon, shall become a lien upon this certificate and shall continue to bear interest at the same rate. Provided further, that such lien may be paid in whole or in part at any time by the member, but if not paid said loan and accumulated interest thereon shall be deducted upon any settlement with the member, or from the amount payable at the death of the member. (Italics in the body of paragraph 3 are ours.)

"4. *Loan Option:* After thirty-six full monthly payments have been made to it, the Association will make a loan to the member, upon the sole security of this certificate, not to exceed the amount set forth in Column 1 of Table A on page 3 hereof for the period to the end of which premiums have been paid in full, with interest at the rate of not to exceed six per cent per annum, payable annually in advance. The loan may be repaid in whole or in part at any time."

. . . . . . .

"The cash, loan, paid-up and extended insurance values, shall not become available until three years from the date of issue, as set forth on page 1 hereof."

Table A for the first five years provides as follows:

"Subject to the conditions stated herein.

"In the actual application of the values printed in this table, consideration will be given to that portion of the year's monthly payments paid over and above the full number of years indicated.

| "(Column 1) | | (Column 2) | (Column 3) | |
|---|---|---|---|---|
| "End of | Cash or | Paid-up | Extended | |
| Certificate | Loan Value | Insurance | Insurance | |
| "Year | | | Years | Days |
| 3rd | $ 62.50 | $116.00 | 2 | 84 |
| 4th | 94.91 | 171.09 | 4 | 192 |
| 5th | 127.91 | 226.00 | 5 | 231 |
| 6th | 161.61 | 279.00 | 6 | 211" |

We have set forth the table for the first six years only. However, the table continues to and includes the twentieth year. There is no dispute between the parties but that the certificate had lapsed, prior to the date of insured's death, if the loan value of the policy is to be calculated upon the theory that the provisions relative thereto are to be considered as having the date of the issuance of the policy, to-wit, the sixth day of March, 1929, rather than that of the first day of March, 1926. However, it is contended by the defendant, but denied by the plaintiff, that, even if the date is to be taken as of March 1st, 1926, the insurance lapsed before the death of the insured.

The undisputed testimony shows that insured had paid eighteen assessments after taking out the last policy and, if he is to be given credit for thirty-six assessments prior thereto, that is, on the theory that the certificate, for the purpose mentioned, is to be taken as of the date of March 1, 1926, the cash value of the policy at the time he ceased to pay assessments, or, in August, 1930, was $111.41.

Defendant's secretary testifying for it, stated, that this sum was sufficient to pay twenty-four months installments, with interest thereon at the rate of five per cent per annum, compounded annually, and would leave a balance of $2.29 on the twenty-fifth monthly installment, that is, on the installment for the month of September, 1932. But of course, it was not sufficient to pay that installment, for the reason that the full amount thereof was $4.33.

Great stress is not laid by the defendant upon the contention made that, for the purpose of computing the loan value of the policy at the time the insured ceased paying his assessments, it should be taken as of the date of March 6, 1929, but it does make the point, and argues it at some length. Substantially the same contention was decided against the defendant by this court in the cases of Daley v. Sovereign Camp, W. O. W., 44 S. W. (2d) 229; Daley v. Sovereign Camp, W. O. W. (second appeal), 55 S. W. (2d) 743, and Cain v. Sovereign Camp, W. O. W., 74 S. W. (2d) 865. [See, also, Higgins v. Sovereign Camp, W. O. W. (Ala.), 141 So. 562; Jones v. Sovereign Camp, W. O. W. (Tenn.), 68 S. W. (2d) 159; Sovereign Camp v. Hardee (Ark.), 66 S. W. (2d) 648; Sovereign Camp, W. O. W., v. Easley (Ark.), 69 S. W. (2d) 273; Sovereign Camp, W. O. W., v. Batty (Ala.), 148 So. 811; Sovereign Camp, W. O. W., v. Thomas (Miss.), 157 So. 83; Dudley v. Sovereign Camp, W. O. W.

(N. C.), 171 So. 352; Benjamin v. Sovereign Camp, W. O. W. (Kan.), 36 Pac. (2d) 993.]

However, defendant contends that this case is unlike the Daley and the Cain cases, supra, for the reason that in the former the answer admitted that the old policy had a reserve value and that in the latter the evidence showed a similar state of facts, while the facts in the case at bar show that the old policy (the one exchanged on March 6, 1929, for the present one), had no reserve but was encumbered by a lien of $242.06. Defendant says that the old policy had no reserve value because it did not provide for a cash or loan value or for paid-up or extended insurance values. Defendant in this connection refers us to Section 5994, Revised Statutes 1929, which provides: That insurance associations of this kind, shall, in no case, make premium loans for extended insurance in excess of the value of the reserve.

The evidence on the part of the plaintiff tends to show that while there is a relation between such values and the reserve value, they are not necessarily the same. It was said in the Cain case, l. c. 886, that "The reserve of the certificate was its net value." It would seem that the old policy has some value for the reason, if none other, that defendant substantially admits as much. It contends that the application and the policy, in regard to the recitations therein of the dates on and as to which the loan value should be computed, fixed the date of March 1, 1926, to be used as a basis for the purpose of computing the amount of the nonforfeiture values but not the date when they should become available. If this were true it shows that the old policy had some value. It is not necessary to go to the extent of saying that courts judicially know that insurance companies issuing policies with fixed premiums do not and cannot carry insurance (in this case approximately nineteen years) without some reserve backing. It is sufficient to say that there is no evidence that the old policy had no reserve value.

Defendant is concluded by the policy in suit from contending that there was not sufficient reserve to give to the new policy the effect that it purports. The Supreme Court of Alabama, in the case of Higgins v. Sovereign Camp, W. O. W., supra, l. c. 564, in answering a similar contention of defendant, aptly said:

"This member had been in good standing about thirteen years before the policy was issued. He had aided in establishing its financial standing. It was not unreasonable that appellee should accord him some substantial benefits from his long and continuous contribution to its resources. This it undertook to do, as the contract imports, and as all parties agree, . . . by saying to him that we will cancel your old policy which contained no such values, and give you a new one and will fix its date April, 1925, instead of now, April, 1929, as the date when your values shall be computed, both in fixing the date of their availability, and therefore of neces-

sity the method of determining their worth. It is admitted that the four-year period was granted the policyholder. The only question is whether it shall not become available until three years after the new policy becomes effective. We think that the rule of strict construction against appellee operates to a different result." [See, also, Jones v. Sovereign Camp, W. O. W., supra, l. c. 163, and Sovereign Camp, W. O. W., v. Easley, supra.]

We are, therefore, of the opinion that the loan value of the policy in suit (for the purpose of saving a forfeiture of the insurance, is to be computed and become available as though the policy had been issued on March 1, 1926, and that monthly assessments or premiums, amounting to fifty-four, had been paid up to and including the month of August, 1930. In other words, that the policy was in its fifth year at the time of the failure of the insured to pay from funds under his control the September, 1930, assessment.

As before stated, insured died on October 1, 1932. According to the provisions of the policy he had until the last day of that month to pay the October assessment. Although insured did not take advantage of options a, b or c, under the heading "SPECIAL PROVISIONS AND CONDITIONS," defendant admits that he was entitled to the benefit of the provisions relative to "Automatic Premium Loan" under that head and that he lacked $2.29, only, of paying the September, 1932, assessment. In other words, it necessarily follows from defendant's admissions, that the policy had a sufficient loan value to pay all but $2.29 of insured's assessments that were required to, be paid at the time of his death in order for it to have been in force at that time.

However, we do not agree with the defendant that there was only $111.41 available to pay insured's assessments. But a casual examination of the policy is required to show that the cash and loan value and the amount of paid-up and extended insurance values of the policy increased each month upon the payment of assessments and there is no reason why these values should not have continued to accrue each month after insured ceased paying assessments out of his own private funds and when defendant began to pay them out of funds which equitably belonged to him in its possession.

Under the testimony adduced by the plaintiff, if the cash or loan value of the policy increased each month upon the payment of assessments by the defendant under the provision of the "Automatic Premium Loan" clause, the policy had a value of $65.10 at the time of insured's death. If this is true it must be conceded that there was enough value in the policy to pay the assessments up to the date of the death of the insured and beyond. Defendant objected to this testimony at the trial and now claims that it was incompetent. We need not pass upon this question because there is no dispute but that the policy had sufficient value to take care of the

assessments until the date of the death of the insured if its loan value was increased each month upon the payment of the assessment by the defendant under the provision of the "Automatic Premium Loan" clause in the policy. However, defendant claims that the loan value of the policy, even if so increased, would avail insured nothing for the reason that said clause of the policy provides that the policy should become null and void when the cash value had been consumed and that this cash value is to be taken as of *"the date of default in the payment of the monthly payments* (the words of the clause). In this connection it is said that if this default took place in September, 1930, the cash value of the policy should be computed as of that date and its value cannot be enhanced thereafter by the monthly payment of premiums by the defendant under the "Automatic Premium Loan" clause. In other words, defendant contends that the "date of default" should be held to mean the due date of the first premium falling due after the last one that insured paid out of that part of his means under his direct control.

There is no doubt that an equity was created in insured's favor beyond the cash value of the policy as it stood when insured ceased paying the assessments out of his own pocket, because defendant substantially admits that under the provisions of the "Automatic Premium Loan" clause, it must be held to have paid the premiums, that he did not so pay, until the cash value of the policy, at the time he ceased to so pay, was consumed. The loan value and the cash value of the policy at this time was the same. The cash was there ready for insured to take it. He did not do so but must be considered as having elected to have the defendant treat it as a loan to him to pay his subsequent assessments. In this sense this money which defendant was paying for insured was his money. The situation would have been no different than if he had paid the assessments out of his own pocket or had he borrowed the money from a bank or from a friend.

To give the policy the construction that defendant contends for would be to deprive insured and his beneficiary of the benefits of a valuable equity that he had in the policy at the time of his death, that is, the increased loan value that accrued to the policy as a result of the payments of assessments that defendant made for him under the provisions of the "Automatic Premium Loan" clause. This should not be done unless the policy clearly indicates such an intention, even if then. It will be noted that in the first part of the "Automatic Premium Loan" clause it does not refer to the discontinuance of the payment of the assessments by insured out of his private funds, as a default in his payments, but, in this connection, refers to payment not made "on or before its due date." If the subsequent provision, relative as to the time when the cash value was to be computed, that is, the clause reading "the date of

default in the payment of monthly payments" were stricken out and the words "said due date" were substituted, it would mean what the defendant says, but the policy was not so worded.

In fact, there was no "default in the payment of the monthly payments" when insured ceased paying the assessments out of his own pocket or private funds. It has been held that where a party entitled to demand payment waives the same by an extension of time for payment, either for a definite or an indefinite period of time, the person bound by the obligation cannot be said to be in default (Arnot v. Union Salt Co., 186 N. Y. 501; DeGroot v. McCutter, 19 N. J. E. 531, 536), and it can be as well said that there is no default when payment is actually made, regardless as to the source thereof. Under the very terms of the paragraph headed "SPECIAL PROVISIONS AND CONDITIONS" insured had an election between options a, b and c, or proceeding under the "Automatic Premium Loan" clause, and it will be considered that he so elected to proceed on that clause. [Mutual Benefit Life Ins. Co. v. Commissioner of Ins., 115 N. W. 707, 710.] In the Daley case, supra, this court said, l. c. 231:

"As is usual in all such certificates of insurance, both the old and the new certificates provided that the insured agreed to obey and be bound by the constitution and by-laws of the association and subsequent changes therein, and that failure to pay any assessment when due would result in suspension of the insured, and render the policy or certificate null and void. But these provisions with reference to suspension and forfeiture of the certificates are modified by the provisions hereinbefore set out, to-wit: No. 2, dealing with cash surrender, loan value, paid-up and extended insurance, and especially option (c) thereof, together with the provision in paragraph 3 referred to in the automatic premium loan plan."

There was, therefore, no suspension or forfeiture of the certificate at the time insured ceased paying assessments out of his private funds (Mutual Benefit Life Ins. Co. v. Comm. of Ins., supra), even though the policy in this respect contained provisions identical with those in the Daley case.

However, defendant claims that the Daley case holds that there was a default when insured ceased to pay his assessments out of his private funds. In that case, this court did refer to such a situation as being a default on the part of the insured. However, this court in that case did not have before it the situation now presented. There was but one question presented and attempted to be decided in that case and that was whether the loan value of the policy, a policy similar to the one in the case at bar, was to be computed upon the pre-dated date rather than the actual date of the policy. It was admitted in that case that if such was the fact there was ample loan value in that policy to pay the assessments to the

time of the death of the insured. Here the question, for the purposes of the point now under discussion, is not whether the pre-date is to be applied but, assuming that it is so to be, does the policy still have sufficient loan value to take care of the payment of the assessments thereon to the date of insured's death?

It may be said that, in the case at bar, there was a default on insured's part in the sense that insured failed to continue to pay his assessments in the ordinary way but there was no default in the sense that the policy was ended by the nonaction of the insured in this respect. [Mutual Benefit Life Ins. Co. v. Comm. of Ins., supra, l. c. 709, 710.]

In the clause under consideration the policy deals with the ultimate end of the insurance, that is, when it finally becomes wholly valueless by the failure of the insured to pay the assessments out of his private funds, followed by the exhaustion of the loan value of the policy by its total consumption in paying the assessments. There could have been no default, in this sense, until that situation was reached. To say the least, the clause in question is subject to construction. That being true, we will construe it in its most favorable light to the insured. Our view is supported by the Supreme Court of Arkansas in the case of Sovereign Camp, W. O. W., v. Easley, supra. We do not agree with the conclusions reached in Sovereign Camp v. Miller (Ala.), 164 So. 743.

From what we have said the judgment should be affirmed, and it is so ordered. All concur.