LAURA P. SWIFT v. KANSAS CITY LIFE INSURANCE CO., A CORPORATION.
—184 S. W. (2d) 184.

Kansas City Court of Appeals. November 6, 1944.

*Cross & Hall* and *White & Hall* for appellant.

*Ray B. Lucas* and *Jos. R. Stewart* for respondent.

SPERRY, C.—This is a suit on a life insurance contract by Laura P. Swift, plaintiff, beneficiary in a policy issued by Kansas City Life Insurance Company, defendant, on the life of James C. Swift, deceased. The court sustained a demurrer to the evidence and rendered judgment for defendant. Plaintiff appeals.

The facts are not in dispute. The policy was issued in 1910, in the face amount of $5000, containing a provision for automatic premium loans; and all premiums were paid until and including the quarterly premium of $35.15 March 3, 1934. The quarterly premium which fell due June 3, 1934, was not paid in cash by insured on its due date, nor during the grace period. Defendant lapsed the policy because of failure to pay this premium. On July 24, 1934, insured write defendant requesting reinstatement of the policy and tendering the quarterly premium but defendant declined to reinstate the policy, returned insured's premium check, and placed the policy on extended term insurance.

When the policy was lapsed it had a cash reserve value of $2250.05 with a loan indebtedness, including interest, of $1996.28, leaving a net value of $253.77 which, it is conceded, was insufficient to provide extended term insurance to the date of insured's death; but the reserve, above accumulated indebtedness, was sufficient to have provided an automatic premium loan so as to have prevented lapse of the policy at that time.

The question is: Was the policy kept in force by reason of the automatic premium loan provision contained therein? The answer

128

to that question must be found by reference to the provisions of the policy and of the loan ·agreement executed by insured on December 30, 1926, when the above indebtedness was consummated.

The policy contains the following· pertinent paragraphs, which, for convenient reference, we have numbered:

### 1.

"Automatic Loan. If any premium on this policy shall not be. paid when due, the same, without action on the part of the insured, *and provided this feature shall not previously have been waived in writing* filed at this office, shall be charged as an automatic policy loan with interest at six per centum per annum if the loan value of the policy be sufficient to cover such loan in addition to any existing indebtedness and accrued interest. . . ."

### 2.

"Paid-Up and Extended Insurance. *Upon written request for . . . extended term insurance,* waiving the automatic policy loan privilege, at any time prior to, or within sixty days after, default in payment of premium, *the company in lieu ·of the automatic policy loan privilege will,* after such *default, . . . extend and continue in force the full amount of this policy as non-participating term insurance* in accordance with the accompanying table. (Emphasis ours.)"

### 3.

"Loans: If this policy be not then extended as term insurance, the company will advance, on proper assignment of this policy and on the sole security thereof, at a rate of interest not exceeding six per centum per annum, *and subject to the regulations of the company then in force relating to policy loans,* and further subject to the laws of the State in which the insured resides at time of insurance of this policy a sum equal to, or, at the option of the insured, less than the amount stated in the accompanying table, in accordance with the number of years for which premiums have been fully paid . . . (emphasis ours)."

The policy loan agreement signed by insured provided as follows:

"If this loan and interest be not paid. when due, and the policy not renewed by the payment of the premium, *I request that the balance of the then surrender value,* including any accrued dividends or coupons, if any, *of policy No 49225 be applied to purchase extended insurance in accordance with the extended insurance provision of said policy; . . .*"

In paragraph 1 the parties contracted for the automatic application of necessary amounts of the cash reserve of the policy to the payment of premiums when they are not otherwise paid, *and that said provision could only be waived in writing.* In paragraph 2 it was agreed that insured might, within a specified time, have the reserve value applied

to the purchase of term insurance, *by waiving the automatic premium loan provision.* Under these provisions of the policy insured was granted a specific and definite right in regard to the application by defendant of reserves to the payment of premiums not otherwise paid; and of that right he could only be divested by his waiver thereof in writing. It is defendant's theory that the "Loan Agreement" contains language which constitutes such a waiver.

"A waiver is an intentional relinquishment of a known right." [Wall Investment Company v. Schumacher, 125 S. W. (2d) 838, 839.] Can it be said that the language of the loan agreement constitutes a waiver of the automatic premium loan provision of the policy? We think not. The words "Automatic Premium Loan" are not found therein, nor does the word "waiver" appear. If it does constitute a waiver it has the effect of cutting down insured's rights as granted under the policy, and we must construe it liberally in favor of insured and strictly against defendant. [Knaoo v. John Hancock Mutual Life Ins. Co., 259 S. W. 862, l. c. 864.] Certainly the language used does not constitute a clear and unequivocal waiver of the automatic premium loan provision.

But that is not all. When the loan agreement is read in connection with the policy provision, as it must be, it·does not appear to conflict therewith, nor to modify or cut down any of said provisions. Under the automatic premium· loan provision defendant agreed to apply such portion of the policy reserves, over policy·indebtedness, as was necessary, to the payment of any premium not otherwise paid. Nowhere in the "Loan Agreement" is it said that thenceforward such a course would not be pursued. In the loan agreement insured requested defendant to apply the policy reserve to the purchase of extended term insurance *if the policy was not renewed by "payment of the premiums;"* but such a request, couched in such language, is not at all inconsistent with defendant's agreement for the automatic application of reserve funds to payment of premiums *so long as such funds should be available.*

Where an insurance company agrees, in its policy, to apply portions of the cash reserve of the policy, over and above indebtedness, to the payment of premiums not otherwise paid, it is required so to do; payments so made are treated in the same manner as if said payments had been made from funds of insured under his own private control instead of from funds of insured under control of the company; and there is and can be no default, or failure to pay premiums, on a policy containing a valid, existing automatic premium loan provision so long as the company has in its possession funds belonging to insured. [Barthel v. Sovereign Camp, W. O. W., 93 S. W. (2d) 285, 290, 291; Cleaver v. Central States Life Ins. Co., 142 S. W. (2d) 474, 481.] Therefore, it cannot be said that the language used in the loan agreement contemplated or provided for a default in the payment of

premiums simply if insured should fail to pay same *in cash from assets under his personal control.*

By the terms of the loan agreement insured requested that, when the time comes, if it should come, when the reserves of the policy had been exhausted by accumulation of indebtedness to such an extent as to leave a sum insufficient to pay a premium, under the automatic premium clause, and if such premium were not paid from any source, such sum should be used for the purchase of extended term insurance. Of a somewhat analagous situation this court said, speaking through BLAND, J., in Barthel v. Sovereign Camp, *supra,* l. c. 291: ''In the clause under consideration the policy deals with the ultimate end of the insurance, that is, when it finally becomes wholly valueless by the failure of the insured to pay the assessments out of his private funds, followed by the exhaustion of the loan value of the policy by its total consumption in paying the assessments. There could have been no default, in this sense, until that situation was reached. To say the least, the clause in question is subject to construction. That being true, we will construe it in its most favorable light to the insured.''

Such a construction as we have given the provisions of the policy and of the loan agreement gives force and effect to all of the provisions of the contract, which should be done, if possible; and it does not lead to a finding that the various provisions are conflicting or result in an ambiguity.

Defendant cites Tabler v. General American Life Insurance Co., 117 S. W. (2d) 278 as supporting its view of his case. That decision has no application here for the reason that insured in that case had, in writing, specifically waived the benefit of the automatic premium loan provision when he sought an agreement to permit him to pay premiums monthly instead of quarterly. It also contends that the decision in New York Life Insurance Company v. Head, 34 Mo. 879, is applicable. The question there considered was whether or not a Missouri statute modified the provisions of an insurance contract. It is not in point.

After defendant wrongfully lapsed the policy and converted it to term insurance insured tendered a premium which was refused. It was, therefore, not necessary that further tender of premiums be made in order that the policy be kept in force. [Newman v. John Hancock Mutual Life Insurance Company, 7 S. W. (2d) 1015, l. c. 1017; Klinkhardt v. Crescent Insurance Company, 47 S. W. (2d) 210, l. c. 212; Hawkins v. Washington Fidelity National Insurance Company, 78 S. W. (2d) 543, l. c. 546, 547.]

It is contended that insured, by his course of conduct, ratified and consented to the lapse of the policy and its conversion by defendant to extended term insurance. The record discloses that on October 12, 1931, October 14, 1932, April 18, 1933, July 7, 1933, and on July 24.

1934, insured acknowledged to defendant that the policy had lapsed for failure to pay premium and applied for reinstatement. It is unnecessary to consider the effect of any such applications for reinstatement excepting that dated July 21, 1943. Defendant rests its contion in this regard on the ruling in Scotten v. Metropolitan Life Insurance Company, 81 S. W. (2d) 313, l. c. 316; Wilson v. Kansas City Life Insurance Company, 128 S. W. (2d) 319, l. c. 325; and Beeman v. Kansas City Life Insurance Company, 104 S. W. (2d) 391, 392. In those cases the rule that where a contract is ambiguous or susceptible of more than one construction, and where the parties themselves have construed it, it will be construed as the parties have construed it, was applied. The rule is not applicable to this case because the contract is not ambiguous when the loan agreement is read in connection with the provisions of the policy, as it must be. [Howard v. Aetna Insurance Company, 164 S. W. (2d) 360, 366.]

Defendant also contends that insured's acceptance and retention of his premium check, which was mailed to defendant on July 24, 1934, and returned to him with notice that defendant declined to accept same or to reinstate the policy, constituted an acquiescence in and ratification of defendant's action in lapsing the policy.

''Acquiescence is a branch of the law of estoppel, and is used to defeat a party's action on the principle of equitable estoppel; that is, it must appear that, because of something that was done, or because nothing was done, the party invoking the estoppel will sustain loss unless it is allowed. Mere silence or inaction short of the limitation period will not bar relief.'' [Purdy v. Bankers' Life Ass'n, 74 S. W. 486, 492; St. Louis Safe Deposit & Savings Company v. Kenneth Estate, 74 S. W. 474, 483; Hamilton v. Northeast Mutual Insurance Association, 116 S. W. (2d) 159, 163.] It cannot be said that defendant was misled to its injury by insured's execution of the reinstatement application or by his retention of the returned premium check and silence thereafter. Defendant had already lapsed the policy before that instrument was executed, as was stated in the instrument itself.

In support of its position defendant cites and relies on Dougherty v. Mutual Life Insurance Company of N. Y., 44 S. W. (2d) 206; Beeman v. Kansas City Life Insurance Company, *supra*, 392; Tabler v. General American Life Insurance Company, *supra*. In the Dougherty case, *supra*, the court was considering the effect of an act of insured with reference to a dispute regarding the true date of the policy. The question discussed was similar to that discussed in the Scotten case. It was held that no matter which date was the true effective date of the policy it was not in effect when insured died. In the Beeman case the court applied to a proper set of facts the rule which was applied in Scotten v. Metropolitan Life Insurance Company, *supra*. We have previously referred to Tabler v. General American

132

Insurance Company, *supra*. None of these cases support defendant on the point here discussed. They are distinguishable on the facts.

The judgment should be reversed and the cause remanded. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.