(92 App. Div. 235.)

SMITH v. KISSEL.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. CONTRACTS—CONSIDERATION.
　　An agreement between a mortgagor and defendant, whereby the mortgagor released his interest in the profits derived from the mortgaged property under a prior contract—providing that the mortgagor and defendant should be equally interested in the property, and should equally divide the profits realized from a sale—and whereby defendant agreed to pay the mortgage debt and relieve the mortgagor from any liability thereon, is supported by a valuable consideration, and, on defendant's performance, the mortgagor's interest in the property ended.

2. ASSIGNMENT OF CONTRACT—SUBSEQUENT RELEASE BY ASSIGNOR—EFFECT.
　　An assignee of a contract is bound by the act of his assignor releasing the other party to the contract from his obligation thereunder, where the latter had no notice of the assignment.

3. APPEAL—FINDINGS OF FACT—REVIEW.
　　The court on appeal is not justified in interfering with the findings of the trial court, based on satisfactory evidence.

¶ 2. See Assignments, vol. 4, Cent. Dig. § 182.

Appeal from Special Term, New York County.

Action by Bertha Smith against Gustav E. Kissel. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

C. Elliott Minor, for appellant.

Richard L. Sweezy, for respondent.

INGRAHAM, J. The action was brought for an accounting. The complaint alleged that on the 16th of July, 1896, one John B. Smith purchased certain property in the city of New York for the price of $140,000, of which $15,000 was to be paid in cash upon delivery of the deed, and the balance by execution and delivery of a bond secured by a mortgage upon the property; that Smith, being desirous of raising $15,000 with which to make the cash payment, applied to the defendant to loan him the money; that the defendant stated that he would procure a loan of that sum, to be secured by a second mortgage upon the property, and, in consideration of the defendant procuring such loan, the defendant demanded of Smith that he be allowed to join with Smith in the purchase and sale of the said property as his partner in reference thereto, and that the rents and profits to be derived therefrom should be equally divided between them; that the defendant subsequently secured a loan of the money, which was secured by a bond and mortgage on the property, and that, in consideration thereof, "it was agreed by and between said John B. Smith and the defendant that said purchase should be for their joint and partnership account, and that they should be equally interested therein, and should divide the profits and proceeds thereof realized from a sale by them or either of them of said property equally, share and share alike." The answer denies these allegations, and alleges that the said Smith applied to the defendant for a loan of $15,000 to enable him to complete the purchase of certain property described in the complaint; that upon procuring the said loan said Smith agreed to enter into a contract to purchase said property, which purchase should be for the joint account of said Smith and defendant; that the defendant agreed to said proposal, and procured the said loan, whereupon Smith entered into a contract to purchase the property; that on or about July 17, 1896, the property was conveyed to Smith, Smith executing to the grantors a first mortgage to secure the payment of $125,000, a part of the purchase price; that the loan procured by the defendant of $15,000 was used to pay the amount required to be paid in cash upon the completion of said purchase, and this amount of $15,000 was secured by a second mortgage upon the premises, which was payable on or before July 17, 1897; that on or about January 21 or 22, 1897, Smith conveyed the premises to a clerk in the employ of the defendant; that subsequent to said conveyance Smith endeavored to find a purchaser for the premises, without success, until some time in February or March, 1897, when Smith stated to the defendant that he was unable to procure a purchaser for the premises, and he then and there agreed to dissolve the said joint interest and account existing between Smith and the defendant, and agreed that the premises should be the sole property of the defendant, the defendant

to pay the amount of $15,000, the loan procured by the defendant for Smith, and that there should be no further accounting as to the rents of the property that had been received by Smith or the defendant, or on account of the agreement to divide the profits.

Upon the trial it appeared that on the 17th day of July, 1896, Smith received a deed of the property, and executed to the vendor a purchase-money mortgage to secure the sum of $125,000, a part of the purchase price, and at the same time executed a second mortgage to Charlotte A. Kissel to secure the sum of $15,000, which became due on July 17, 1897; that this money was paid to Smith to enable him to complete his purchase of the property; that subsequently Charlotte A. Kissel died, whereupon her executors transferred the said mortgage to Rudolph H. Kissel on February 9, 1897. On January 22, 1897, Smith and wife conveyed the premises in question to Bashford, a clerk in the employ of the defendant, and it was conceded that that was a conveyance for the benefit of defendant. Smith testified that from the 1st of December, 1896, to the 1st of January, 1897, he had collected all the rents of the property, and that subsequently the defendant sold the property. The plaintiff then rested, whereupon the defendant testified that he had no knowledge that the plaintiff had any interest in the contract or the property until the commencement of the action; that some time early in 1896 Smith applied to the defendant for a loan of $15,000 to make a cash payment for the purchase of this property; that Smith stated to the defendant that, if the defendant would procure that loan, he (Smith) could sell the property within six months, would attend to the management and sale of the property, and would divide with the defendant the profits that he received in the transaction; and that at that time Smith wrote the defendant a letter, which was introduced in evidence, as follows:

"My Dear Sir: In consideration of your procuring $15,000 from Charlotte A. Kissel to contribute towards the purchase of the Grace Church property, (13th to 14th Streets), I will divide with you all profits.
. "Yours very truly,                          John B. Smith."

He also testified that Smith and the defendant had interviews from time to time in relation to the sale of the property, at which Smith stated that he was doing his utmost to sell it; that these interviews continued until January, 1897, when Smith came to the office of the defendant and said that for private reasons he wanted this property put in the hands of some one else; that one of the defendant's clerks would do; that he wanted the property transferred at once—within 24 hours —whereupon the defendant called up an attorney, and the property was conveyed by Smith to Bashford, one of the defendant's clerks; that Smith still continued his efforts to procure a purchaser for the property. After this second mortgage became due, proceedings were commenced to foreclose it, and while that action was pending, some time in February or March, 1898, Smith came to the defendant and said that he was in trouble—that the defendant was having the mortgage foreclosed. To this the defendant replied that the mortgage belonged to his brother, and that he was conducting his own affairs, to which Smith replied, "Well, you can control it;" to which the defendant said, "That is possible; I can control it by paying it." Smith said: ."What

are you doing this for? You have got ᴄ.ᴇrything that you can get by a foreclosure, and what do you want to keep on for? Why do you want to keep on? You have got everything; you have got the title in your own name. You have control of this mortgage, and, if you foreclose it, what are you doing it for? I have had a great deal of trouble, and it will only add further harᴋ and trouble. This thing is all ended;" to which the defendant replieᴅ. "I am doing it to get an undisputed title to this property, because now I have to bear the burden. You are out of it, and under those circumstances I want to be sure of my title;" to which Smith said: "How can you be more sure of your title than you are now? You own the thing; you own the mortgage. I can't do anything more, and why don't you stop?" That Smith further said that he would call it square if the defendant "will take care of the mortgage"; that the defendant reminded Smith of the fact that the burden was coming along, that it was a very great one, that this first mortgage of his became due in six months, that the second mortgage was due, and then said to Smith: "You can't do anything here. You tell me yourself that you have no money; that you are insolvent;" that under those circumstances "this is no·longer a joint account"; and Smith replied: "That is perfectly true. I don't want any more interest in the thing, but there is no necessity of anything between us; you have got it now;" That Smith then abrogated the contract, which was only a verbal one between the parties, and the defendant accepted the abrogation in consideration of his letting Smith off from further annoyance, the defendant to take care of the mortgages; that the mortgages were taken care of by the defendant, and Smith took no further interest in the property until the suit was commenced; that at the time of this conversation there was no negotiation pending for the sale of the property. After this contract the defendant entered into negotiations for the sale of the property, and subsequently made a contract with the purchaser to sell the property for $165,000. To complete that contract, the defendant paid the second mortgage of $15,000, and also the first mortgage for $125,000, and then procured a new mortgage upon the property for $100,000, paying the difference in cash, and also paying the charges, commissions for obtaining the loan, and unpaid taxes; that he advanced $32,000 in cash to put the thing through, and received the difference between the amount that he had procured on the property and the purchase price of the property in a second mortgage upon the property made by the purchaser; that he made these payments entirely relying upon the agreement with Smith that Smith released all claim against the agreement to divide the profits, and without knowledge of any assignment by Smith to the plaintiff, treating the whole transaction as a complete abrogation of the agreement between himself and Smith to divide any of the profits realized upon this transaction.

It is quite apparent that the real consideration for Smith's release of this interest in the property was the agreement by the defendant to release Smith from any obligation that he was under in relation to the mortgages then upon the property, and by which the defendant assumed those obligations and agreed to furnish the money necessary to protect the property. When the agreement for the division of the profits was

made, Smith owned the property. He subsequently conveyed it to the defendant's clerk, and the fact that shortly afterwards judgment was entered against Smith explains this conveyance. Undoubtedly this conveyance would not change the legal obligation of the defendant to account to Smith for any profits subsequently realized in the disposition of the property; but when Smith came to the defendant and stated that he could do nothing further in relation to it, that the foreclosure of the mortgage for $15,000 was embarrassing him, and requested the defendant to take care of the mortgages, and in consideration thereof that he would release the defendant from all claim for any interest in the profits, the defendant accepting that in good faith and subsequently paying off the mortgages upon the property, the consideration for Smith's release of his interest in the profits was the obligation assumed and carried out by the defendant of providing the money necessary to pay the incumbrances upon the property, and his subsequently paying off these mortgages was certainly a valuable consideration for Smith's release of his right to any portion of the profits. There was no possible defense by Smith to the foreclosure of the mortgage for $15,000. The defendant has assumed no obligation as to it, and, if that foreclosure had been carried out and the property sold, it is quite clear that Smith would have had no further interest in the transaction. Smith had been unable to effect a sale of the property, and there were then no profits to which he would have been entitled; and there is not the slightest evidence to show that at the time of this transaction there was any offer for the property, or negotiations for its sale. Assuming that this account of the transaction by the defendant was true, there was a perfect valid agreement by which Smith's interest in the property was discharged, and the defendant acting upon that agreement, discharging Smith from all liability upon his obligations, terminated Smith's relation to the property, and any rights that he would have under his agreement with the defendant. There was no obligation upon the defendant to make these large payments that were necessary to pay the mortgage on the property, and he paid these mortgages relying upon Smith's agreement to abrogate their understanding as to the division of the profits. Upon the performance by defendant of this agreement, Smith's right to any future interest in the profits was at an end.

The plaintiff produced an assignment of Smith's right under this agreement with the defendant, dated April 2, 1897. This was some time before the arrangement between Smith and the defendant by which Smith terminated his interest in the contract. The evidence is clear that the defendant had no knowledge of this transfer. The plaintiff gave him no notice of it, and the defendant continued to treat Smith as the principal, and, relying upon Smith's undertaking, made these payments and relieved Smith from his obligations upon the mortgages. There can be no question but that, in the absence of knowledge of the assignment, the plaintiff was justified in treating Smith as the person entitled to whatever rights there were under the contract, and the plaintiff, therefore, is bound by the act of Smith, her assignor, in releasing the defendant from any obligation under the contract in relation to the profits to be realized from the sale of this property. It is true that Smith denies that he made this agreement with the defendant, but the

court has found in favor of the defendant upon satisfactory evidence, and we are not justified in interfering with the findings by the trial court. It is quite clear that by this agreement Smith, for a valuable consideration, released the defendant from any obligation to account for the subsequent profits realized from a sale of the property, and that, this agreement being found, the court below was right in dismissing the complaint.

It follows that the judgment appealed from must be affirmed, with costs. All concur.