Michael Catalano, J.
The plaintiff seeks to foreclose a duly recorded purchase-money bond and mortgage executed by the defendants, as mortgagors, under date of November 1, 1957, running to Sophia Winker (herein called “ Sophia ”), as mortgagee, in the amount of $7,000, payable “ at the rate of Two Hundred ($200.00) Dollars semi-annually, on April 1st and on November 1st of each year, together with interest at the rate of four per cent (4%) per annum payable semi-annually, on April 1st and on November 1st of each year, the first payment on the principal to be due and payable on November 1, 1959, and semiannually thereafter, said payments to continue until the mortgage shall be fully paid” and providing, inter alia, that the whole of said principal sum and interest shall become due at the option of the mortgagee after default in the payment of any installment of principal or interest for 30 days.
On August 1, 1961, this bond and mortgage was assigned to the plaintiff by an instrument duly recorded on August 28, 1961.
The plaintiff’s complaint alleges that no part of the principal has been paid, thus there is due him “the principal sum of Seven Thousand Dollars ($7,000.00), together with interest thereon from the 1st day of August, 1961.” His bill of particulars states that the defendants failed to pay $200 upon the principal on April 1 and November 1 of each year since November 1,1959.
*806 The defendants’ answer alleges full compliance and payment under the bond and mortgage. Their bill of particulars alleges payment by them between December 19, 1957 and December 24, 1961 according to an agreement between Sophia and the defendants who allowed Sophia to reside on the mortgaged premises from December, 1957 to her death, December 24, 1961, without payment of rent and permitting Sophia to collect and retain all rents from said premises, “ in consideration for which the said Sophia Winker waived and cancelled and discharged all payments of interest and principal due on the said bond and mortgage during such period of time. ’ ’
The real property involved, known as 1003 — 19th Street, Niagara Falls, New York, is described as follows: “ all that tract or parcel oe laud, situate in the City of Niagara Falls (formerly Town of Niagara), County of Niagara and State of New York, known as and being Subdivision Lot 48, situate on the east side of 19th St. (formerly Stedman St.) as shown on a Map showing part of Lot 39 of the Mile Reserve and part of Lot 21, Township 13, Range 9, being the Kinsley Purchase of the Child’s Estate, as subdivided by Myron H. Kinsley, surveyed and drawn by Julius Frehsee, Surveyor, August 27th, 1887, and filed in Niagara County Clerk’s Office September 26,1887.”
The simple issue is: Was the bond and mortgage paid when due ? The answer is: Yes.
The plaintiff is the son of Sophia who was the grandmother of defendant Margaret who is the wife of defendant Richard. Sophia died December 24, 1961 at the age of 85 years. Sophia resided on the mortgaged premises from December, 1957 to June, 1961; she rented three or four car spaces at $4 each monthly in the rear of the premises during that time and retained the rents paid therefor. In June, 1961, Sophia, then aged 85 and very ill, went to live with her son, Earl Winker, a brother to plaintiff and an uncle to defendant Margaret. The interest on the mortgage had been paid up to August 1, 1961, when the plaintiff acquired it. The actual payment of interest was made by allowing Sophia to live in the house without payment of rent during occupancy; the payment of principal was postponed during Sophia’s occupancy according to agreement.
When Sophia vacated the premises, the plaintiff took complete possession thereof, boarded up the windows and obtained the key to the house. He refused to give the key to the defendants at any time.
On November 10, 1961, the plaintiff received a check for $270 dated November 7, 1961, payable to him from the defendants, $200 of which was for principal and $70 of which was interest *807 from August 1,1961 to November 1,1961. On May 27, 1962, the plaintiff received a check for $340, payable to him from the defendants, $200 of which was for principal and $140 of which was for interest. Both of these payments were refused by the plaintiff.
Before this action was commenced, the attorney for defendants requested the plaintiff’s attorney to furnish defendants with a statement of any amounts due on this mortgage, but no statement was ever given.
In a foreclosure action brought by the assignee of a mortgage, a parol promise by the assignor to the debtor to extend the time of payment of the secured debt is binding and enforcible as a defense, where consideration was given for the promise, for such does not vary the terms of the mortgage but merely holds payment in abeyance until the expiration of the time fixed by the new contract. (Dodge v. Crandall, 30 N. Y. 294, 303, 305.) The consideration given for the new promise makes the contract an executed one, since there is nothing executory on the part of the promisee to do, thereby removing the contract from the Statute of Frauds. (Ibid., pp. 304, 307; followed in Brown v. Farmers’ Loan & Trust Co., 117 N. Y. 266, 273; see, also, Fish v. Hayward, 28 Hun 456, 458, affd. 93 N. Y. 646.) The extension contract may be proved under a general denial. (Ibid., 30 N. Y. 294, 306.)
Trusts may arise from the acts of parties, whose intention is presumed, although not expressly declared, under the name of “constructive trusts” or “trusts ex maleficio,” where the legal owner of property is deemed a trustee, who is bound to hold that property for the benefit of an innocent beneficiary, so that the Statute of Frauds will not be used as an instrument of fraud and so that a person who obtains title to property through the influence of a confidential relation may not retain it in violation of a confidence to his unjust enrichment. (Wood v. Rabe, 96 N. Y. 414, 422, 425, 426; see, also, Harrington v. Schiller, 231 N. Y. 278, 284.) The confidential relationship protected not only extends to the family, but to lawyer and client, doctor and patient, priest and parishioner, and many others bound by intimacy and trust. (Fraw Realty Co. v. Natanson, 261 N. Y. 396, 402; see, also, Goldsmith v. Goldsmith, 145 N. Y. 313.)
In cases involving trust property, strict performance may be waived by any agreement, declaration or course of conduct by the holder which leads the owner to believe justifiably that a forfeiture will not be claimed without a reasonable opportunity to redeem, and no further consideration is required to enforce a waiver of a contractual condition requiring payment .on a *808 certain date. (Toplitz v. Bauer, 161 N. Y. 325, 333.) A waiver of strict payment by extending the time in which it may be made cannot be used as a default that entitles a mortgagee to foreclose under an acceleration clause in a bond and mortgage, unless the debtor is allowed a certain time for payment or has been given a reasonable time after notice within which to perform. (Arnot v. Union Salt Co., 186 N. Y. 501, 510, 511.) An equitable estoppel results where one party to a contract, before the time for performance by the other party arrives, consents, upon request, to extend the time of performance, for he is presumed to know that the other party relies upon the consent, and until notice of withdrawal is given there will be no default, although the contract time has elapsed. (Thomson v. Poor, 147 N. Y. 402, 410; see, also, Bank of United States v. Manheim, 264 N. Y. 45, 49.)
Generally, an assignee’s rights depend upon his assignor’s. (State Bank of Albany v. Dan-Bar Contr. Co., 12 A D 2d 416, 418.) Thus, a purchaser of a bond and mortgage takes the interest, subject to all defenses of the mortgagor. (Bush v. Lathrop, 22 N. Y. 535, 538; followed in Union Trust Co. of Rochester v. Allen, 239 App. Div. 661, 664; see, also, Smith v. Kissel, 92 App. Div. 235, 241, affd. 181 N. Y. 536.) Payment is an affirmative defense to be pleaded and proved by the defendant. (Shilowitz v. Wadler, 237 App. Div. 330, 333; Redmond v. Hughes, 151 App. Div. 99,102.)
In this case, Sophia, on July 27, 1960, wrote a letter to her granddaughter and her husband, the defendants: ££ you don’t have to pay me interest because I live here and don’t pay rent but I have the bond and mortgage paper here but I will put it paid to make sure. Just pay the taxes and fire insurance to cover the mortgage * * * Why don’t you sell the house unless you want to move here it is only a headache to you.” On September 23, 1960, she wrote another letter to the defendants: ‘£ I have 3 cars parked here at $4 a month. They can’t park in the market any more. Will I send you the money? Margaret sell the house for I will live with Frances. I thought you were coming home. * * * Should I take the money out of the car rent to have the grass cut? ” On April 26, 1961, she wrote another letter to them:£ £ Did you ask Herman if he wants to buy it or can I live here for the mortgage * * * Eddie was cleaning windows at his work let me know if I can live here for the mortgage * * * kiss the children for me. ’ ’
“ Eddie ’ ’ referred to Edward A. Moody, who married another of Sophia’s granddaughters. In the Fall of 1959, Eddie was putting up storm windows for Sophia when she stated to him, *809 according to his testimony: ‘1 She was going to let the mortgage and interest payments go because she was living there and she had cars parked there and she was collecting rent from the cars parked there and she said if she moved out and moves some other place it would cost more than it was there so she figured it was only fair to them to pay her rent that way.”
Here, the plaintiff has lived and still lives two doors from the real property in question. He knew that Sophia, his mother, resided there alone from December, 1957, to June, 1961; that Sophia rented ear space in the back yard for 4 cars; that Sophia left the premises in June, 1961 and went to live with his brother Earl; that Sophia told him that the interest on the mortgage had been paid up to August 1, 1961, as indicated in his testimony: ‘ ‘ She told me the interest was paid, she was allowed to live in the house and she waived the interest on this mortgage for living in the home.”
The method of extending the time of payment of principal on the bond and mortgage and the method of payment of interest thereon to August 1,1961 were proper and sufficient. The plaintiff had knowledge thereof before he purchased the bond and mortgage from his mother, who had vacated the premises before she assigned the instruments to the plaintiff. Sufficient consideration was paid by the defendants to Sophia under the arrangement of convenience between grandmother and granddaughter.
This plaintiff may not use the Statute of Frauds as an instrument of fraud. He may not disregard the family arrangement that was made to help grandmother have a home in return for the nonpayment of interest and the postponement of payment of principal while she resided in the defendants’ home. He may not refuse to accept proper payment of principal and interest according to the terms of the bond and mortgage tendered a few days, and less than 30, after the specified due date in order to claim a technical default in order to foreclose a mortgage concerning which time was never considered of the essence between grandmother and granddaughter. He never gave defendants notice that he was going to insist upon prompt payments according to the bond and mortgage. He received only that which Sophia had to assign to him, including the burden of the confidential family agreement to allow payment of interest to be made in other than money and to allow payment of principal to be postponed until an ascertainable future date. His refusal to accept the first, proper, timely payment of principal and interest made it futile to continue to offer further payments, especially since he attempted to obtain and retain exclusive *810 possession of the mortgaged premises while he claimed an nnadjndicated default on the mortgage by the defendants. His conduct was intended to obtain unfair advantage by legalist manipulations in violation of a confidential family relationship crowned by obvious love and affection between his mother and his niece; this he may not do.
All above matters of fact are found to be true and an essential part of this decision.
Therefore, judgment is granted in favor of the defendants and the complaint is dismissed, with costs to the defendants.