Poughkeepsie Savings Bank, Appellant, v R & G Sloane Manufacturing Company, Inc., Respondent, et al., Defendants.

Second Department, December 31, 1981

**APPEARANCES OF COUNSEL**

*Corbally, Gartland & Rappleyea* (*Robert M. Cohen* of counsel), for appellant.

*Peter L. Maroulis* (*Gerald V. Hayes* on the brief), for respondent.

*Per Curiam.*

On February 6, 1973, Gus Gekakis, Inc., as landlord, entered into a 10-year lease with respondent R & G Sloane Manufacturing Company, Inc., as tenant. On or about March 7, 1973, the landlord caused a bond and mortgage on the property to be executed and delivered to plaintiff-appellant, Poughkeepsie Savings Bank.

Approximately one year later, the landlord executed and delivered to the bank an "assignment of rents" agreement. The tenant continued to pay the rent directly to the landlord for a period of six months. In a letter dated September 12, 1975, the bank notified the tenant of the assignment, enclosed a copy thereof, and requested the tenant to remit the monthly rental checks directly to the bank. In a letter to the bank dated November 17, 1975 the tenant stated that "[u]ntil we receive different instructions from you, it is our intention to forward successive rental checks to you in your capacity as assignee". Enclosed with the letter was the rent check for October, 1975. Thereafter the tenant remitted the rental checks directly to the bank pursuant to its instructions until on or about September 1, 1976, when the landlord and the tenant entered into an agreement for the cancellation of the lease in exchange for the payment of $30,000 to the landlord.

Subsequent to the execution of the cancellation agreement, the landlord defaulted on the mortgage obligation and, on or about April 5, 1977, the bank commenced an action to foreclose the mortgage. The tenant was named as a defendant in the foreclosure action but was not made a party thereto by service of process "in view of the fact [that it] had previously vacated the premises."

The bank obtained a judgment of foreclosure and on March 2, 1978, it purchased the property for $200,000 at a public sale. On August 31, 1978 the bank obtained a deficiency judgment against the landlord in the amount of $103,982.18.

In June, 1979 the bank sold the premises to third parties, and also executed an agreement in which it stated, *inter alia,* that "[t]here are no present leases on [the] premises."

The bank instituted the present action on July 19, 1978 seeking to hold the tenant liable for damages based on four causes of action, namely: (1) for unpaid rent due under the lease and payable to it by virtue of the assignment, (2) for interference with the contractual rights of the appellant under the assignment, (3) for conspiracy to impair those rights, and (4) for punitive damages.

In an order dated July 28, 1980, the bank's motion for summary judgment was denied and the tenant's cross motion for summary judgment was granted.

When mortgaged premises are burdened by a lease at the time of the execution of the mortgage, the rents to fall due under that lease represent an element of the security against which the mortgagee could seek recourse in the event of default. In order to protect this element of security, conditional assignment of rents clauses are often inserted into the mortgage with respect to rental property. However, due to the limited nature of the mortgagee's interest in the mortgaged premises under New York law, a conditional assignment of rents clause in a mortgage is effective only as a consent to the appointment of a receiver upon default (*Sullivan v Rosson,* 223 NY 217), and it has been held that even after default, the mortgagor, absent fraud, is not precluded from entering into an agreement to cancel the lease (*Katzen v Eight-Twenty Park Ave. Corp.,* 176 Misc 625, affd 262 App Div 838, mot for lv to app den 286 NY 734). In order to afford mortgagees protection against such lease cancellation agreements, the Legislature enacted section 291-f of the Real Property Law, which provides that: "An agreement, referring to this section, contained in a recorded mortgage of real property, or in a recorded instrument relating to such mortgage, restricting the right or power, as against the holder of the mortgage without his consent, of the owner of the mortgaged real property to cancel, abridge or otherwise modify tenancies, subtenancies, leases or subleases of the mortgaged real property in existence at the time of the agreement, or to accept prepayments of instalments of rent to become due thereunder, shall become binding on a tenant or subtenant after written notice of such agreement, accompanied by a copy of the text thereof; and any such cancellation,

abridgement, modification or prepayment made by such tenant or subtenant, after such written notice, without the consent of the holder of such mortgage, shall be voidable as against the holder, at his option."

The tenant contends that since the bank did not comply with section 291-f, it was not precluded from entering into the lease cancellation agreement with the landlord. We disagree. Although the bank was a mortgagee of the property upon which the leased premises were located, and although it obtained an assignment of rent, the foregoing statute was intended to apply only to conditional assignment of rent clauses contained in a mortgage or in a recorded instrument relating to a mortgage. The assignment of rents in this case was not conditioned upon the happening of a default and the appointment of a receiver. Rather, it was intended as a present transfer, by the landlord to the bank, of the right to receive rents up to an amount sufficient to satisfy the mortgage on the premises.

Accordingly, section 291-f of the Real Property Law is inapplicable. The issue is whether, on the basis of general contract principles, the landlord and tenant could validly terminate the lease without the permission of the assignee bank.

At common law, an assignment of future rents does not create a landlord-tenant relationship and therefore the assignee cannot institute a summary proceeding to remove the tenant (e.g., *Printerion Realty Corp. v Fischer-Partelow, Inc.,* 167 Misc 452, 454 — "[a] mere assignee of rent cannot maintain summary proceedings for non-payment of rent"; see, also, *810 West End Ave. v Frankel,* 113 Misc 338). However, the assignee may maintain an action for breach of the covenant to pay rent. "It has been settled in England and here, that the assignee of the rent alone, without the reversion, may recover in his own name in an action of debt" (*Moffatt v Smith,* 4 NY 126, 128; 2 New York Law of Landlord and Tenant, § 661, p 401; *Van Rensselaer v Secor,* 32 Barb 469; *Tyler v Heidorn,* 46 Barb 439). Furthermore, where a covenant to pay rents has been assigned by the landlord, the tenant's payment of rent to the landlord after notice of the assignment fails to discharge the tenant's obligation under the covenant and the

assignee may sue to recover damages for the tenant's breach thereof (*Willard v Tillman,* 19 Wend 358).

■ Here, however, the landlord and tenant entered into an agreement to cancel the lease upon payment of a sum of money by the latter to the former. The question is whether by such an agreement the landlord and tenant can validly terminate the duty to pay rent to the assignee? The answer to that question is no. Where a landlord has assigned rents due under a lease as collateral security for a debt and the tenant has been given notice of the assignment, the landlord and tenant cannot agree to cancel the lease without the consent of the assignee, and such an agreement is ineffective to impair the assignee's rights (*Darling Shop of Birmingham v Nelson Realty Co.,* 262 Ala 495, 501). The *Darling Shop* case is in accord with the law of New York as it applies to assignments generally, as evidenced by the holding in *Continental Purch. Co. v Van Raalte Co.* (251 App Div 151, 152), where it was stated:

"While the assignee of a chose in action succeeds to all the rights of the assignor, a debtor is not affected by the assignment until he has notice thereof. If he pays his indebtedness to the assignor in ignorance of the assignment, he is relieved from all liability to the assignee. He may set up against the claim of the assignee any defense acquired prior to notice which would have been available against the assignor had there been no assignment. (*Callanan* v. *Edwards,* 32 N.Y. 483, 486; *Smith* v. *Kissel,* 92 App. Div. 235, 241; affd., 181 N.Y. 536.)

"After notice of the transfer, however, the debtor is put on his guard, and if he pays the assignor any money which, under the assignment, belongs to the assignee, or if he does anything prejudicial to the rights of the latter, he is liable for the resulting damage. (*Lauer* v. *Dunn,* 115 N.Y. 405, 409; *Brill* v. *Tuttle,* 81 id. 454, 460; *Weniger* v. *Fourteenth Street Store,* 191 id. 423, 427; *Heermans* v. *Ellsworth,* 64 id. 159, 161; *Wheeler* v. *Wheeler,* 9 Cow. 34; *Wilkins* v. *Batterman,* 4 Barb. 47; *Briggs* v. *Dorr,* 19 Johns. 95; *Anderson* v. *Van Alen,* 12 id. 343.)" (See, also, *Becker v New Penn Dev. Corp.,* 269 App Div 395, mot for rearg and lv to app den 269 App Div 924, mot for lv to app dsmd 295 NY 635; *Lincoln Rochester Trust Co. v Marasco Steel,* 66 Misc 2d 295;

*Grutzner v Howard,* 167 Misc 540; *Doyle v East N.Y. Sav. Bank,* 44 NYS2d 318, affd 44 NYS2d 328.)

To the same effect, the Court of Appeals has stated that "[a]n assignee of a chose in action * * * who has given notice of the assignment [to the debtor], is not liable to be prejudiced by any new dealings between the original parties to the contract" (*Myers v Davis,* 22 NY 489, 491; *Grossi v Rialto Security Corp.,* 273 NY 403, 406).

Accordingly, we hold that the first cause of action asserted in the bank's complaint states a good cause of action to recover for the breach by the tenant of its covenant to pay rent because the tenant's duty under that covenant was unaffected by the purported lease cancellation agreement.

The bank's second cause of action is also legally sufficient. In New York, an action will lie against one who intentionally induces another to breach the plaintiff's contract with a third party. In order to recover upon such a cause of action, a plaintiff must prove: (1) the existence of a valid contract, (2) knowledge of that contract on the part of the defendant, (3) the intentional procurement by the defendant of the breach of that contract, and (4) damages (see *Israel v Wood Dolson Co.,* 1 NY2d 116, 120; *Lamb v Cheney & Son,* 227 NY 418; *Hornstein v Podwitz,* 254 NY 443).

The first element to be established is the existence of the contract which has allegedly been subjected to interference by the tenant. The bank argues (1) that the assignment of rents must be construed to contain an implied covenant by the landlord that he would not release the tenant from the lease and (2) that by inducing the landlord to cancel the lease, the tenant tortiously interfered with that implied covenant in the assignment contract.

"It is generally recognized that, in the absence of circumstances showing a contrary intention, the assignor warrants that he will do nothing to interfere with the thing assigned or to defeat or impair the value of the assignment; if he does so, he renders himself liable to the assignee for any damage resulting from such interference" (6 Am Jur 2d, Assignments, § 107). We hold that such an implied

warranty should be read into the assignment contract. This is in accord with the basic principle that "although an assignee takes no greater right than that of his assignor, once having obtained a valid assignment, on notice to the debtor, the assignor cannot without consent, impair that right" (*Ives v Mars Metal Corp.*, 23 Misc 2d 1015, 1016; *Continental Purch. Co. v Van Raalte Co.*, 251 App Div 151, *supra*).

■ The second cause of action, to recover for tortious interference with the bank's contractual rights under the assignment is properly pleaded and can withstand the tenant's motion for summary judgment. In addition to the existence of a valid contract, the bank has pleaded and produced evidence that the tenant had notice of the assignment, that it sought to procure the cancellation of the lease and that the bank has incurred some loss.

The tenant contends that the bank ratified the lease cancellation agreement and should be estopped from attempting to collect rents, citing *Rothschild v Title Guar. & Trust Co.* (204 NY 458, 461), in which it was said that: "Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself or so as to affect the rights or relations created by it between the wrongdoer and a third person, he acquiesces in and assents to it and is equitably estopped from impeaching it."

We find no estoppel in this case. It has not been shown that the bank had a duty to speak because there is no evidence that the bank knew of the negotiations between the landlord and tenant to terminate the lease. Furthermore, in *La Mont Corp. v La Mont* (255 App Div 394, 395), the Appellate Division, First Department, stated: "The fifth defense attempts to set up an estoppel. The contention is that plaintiff stood by during a period of about five years, when defendant had been led to believe that plaintiff had abandoned a certain claim. The defense does not state facts which give rise to an estoppel. The contractual obligations fixed the rights of the parties, and mere failure to assert same by either side would not create an estoppel."

The bank's third cause of action appears to be an attempt to charge defendants with liability for a conspiracy. Our law does not recognize the existence of an independent "tort of conspiracy" and allegations thereof are immaterial except insofar as they tend to connect each defendant with an actionable injury (*Health Delivery Systems v Scheinman,* 42 AD2d 566, 567). The third cause of action was properly dismissed as its allegations were subsumed in the charges made in the second cause of action alleging that the tenant and landlord "intentionally * * * induced * * * each other to repudiate and breach" the assignment of rents. The fourth cause of action, seeking punitive damages, was also properly dismissed, as a demand for punitive damages does not constitute a separate cause of action (see *Schwed v Turoff,* 73 AD2d 615).

Accordingly, the order appealed from should be modified so as to deny summary judgment to the tenant except as to the bank's third and fourth causes of action. As so modified, the order should be affirmed, without costs or disbursements.

DAMIANI, GIBBONS and WEINSTEIN, JJ., concur; HOPKINS, J. P., concurs in the result.

Order of the Supreme Court, Dutchess County, dated July 28, 1980, modified by deleting the second and third decretal paragraphs and substituting a provision granting the cross motion of defendant R & G Sloane Manufacturing Company, Inc., for summary judgment only as to the third and fourth causes of action and otherwise denying the cross motion. As so modified, order affirmed, without costs or disbursements.