*267 OPINION OF THE COURT
Lewis R. Friedman, J.
The tight economy brings rising pressure on cooperative housing companies to meet expenses. Foreclosure proceedings such as the case at bar result when the parties cannot work out their differences (see, New York Times, June 16, 1991, section 10, at 1; cf, De Santis v White Rose Assocs., 152 Misc 2d 567). This motion for an injunction raises an issue, not discussed in the reported cases, of the power of the board of directors of a cooperative housing corporation to reduce the "maintenance,” or rent, to be paid by the proprietary lessees during the period of a foreclosure proceeding.
The defendant 520 West 50th St. Inc. is a cooperative housing company that operates a 40-unit apartment building at 520-522 West 50th Street. A number of the units have been sold to individual cooperative owners since the conversion in 1989. There was an underlying consolidated mortgage dated 1988 for $1,500,000 to East New York Savings Bank (ENY) and a wraparound mortgage given to the sponsor. In a separate action Justice Beverly Cohen invalidated the wraparound mortgage (Landsman v S&L Assoc., index No. 19152/92, June 4, 1993). The ENY mortgage has been in default for some time. The notice of pendency of this foreclosure action was filed November 4, 1992; this court appointed a receiver in January 1993.[1]
The board of directors at the October 4, 1993 meeting adopted a budget for the building and set the annual "cash requirements” of the building. The minutes show that the board considered that since a receiver had been appointed "the bank may not receive debt service on its mortgage without a Court order. Therefore debt service is not at present a bona fide expense of the Company for 1993. $143,000 divided by 4,765 total shares = $30.01 per share per year maintenance.” Maintenance was reduced approximately $30 per share per year in accordance with the budget since mortgage payments would not be paid by the receiver.
ENY contends that Real Property Law § 291-f precludes any reduction in the rent or maintenance. Therefore, it seeks to *268 enjoin the maintenance reductions. In paragraph 14 of the consolidated mortgage the owner agreed not to "modify any such lease so as to shorten the term, decrease the rent * * * or make any other material modification in the terms thereof.” The paragraph explicitly provides that it is enforceable under Real Property Law § 291-f. That statute provides that any mortgage containing a term such as that in paragraph 14 "shall become binding on a tenant or subtenant.” ENY argues that a reduction in the "cash requirements” reducing the maintenance or rent due from the shareholders represents a lease "modification” which it seeks to enjoin.
The issue here is important beyond the case at bar since paragraph 14 is essentially the part of the basic "boiler plate” provisions in nearly every mortgage on real property in New York State, including all cooperatives.
Defendant argues that its acts were permissible and are protected from judicial review under the "business judgment” rule (Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530). Levandusky and its progeny are irrelevant. The Court of Appeals noted that in a cooperative housing corporation the shareholders made "a voluntary choice to cede certain of the privileges of single ownership to a governing body.” (Supra, at 536.) Accordingly, when the decisions of a board of directors are made in good faith within the scope of its authority, the court, in an action by a shareholder, may not substitute its judgment for that of the board. This motion, by a person who is not a shareholder, is completely different. ENY, plaintiff, challenges a decision by the corporate entity, which, it alleges, will impinge upon its rights under the mortgage. ENY never ceded any of its decision-making rights to the defendant’s board of directors. The board is not making a decision on ENY’s behalf and ENY is not bound by its decision or its "business judgment.” Defendant also argues that the board’s acts are immune from judicial scrutiny because they were taken "pursuant to the order of Judge Beverly Cohen.” The short answer is that Justice Cohen did no more than specify who may act for the corporation and did not immunize the acts of the board. Thus, the court must address the merits.
The language of the mortgage, interpreted in a straightforward manner, requires that the motion be denied. The mortgage does not prohibit rent reductions; rather it only prohibits the owner from "modifying” the leases to reduce the rent. Here, as in every cooperative building, the amount of the rent *269 is not fixed on the face of the lease. Rather, the rent varies with the "cash requirements” set by the building’s board of directors from time to time. All the proprietary leases in the building use identical language and are typical of nearly all those used in proprietary leases in housing cooperatives throughout the State. "Rent, sometimes called maintenance,” is set each year and "shall equal that proportion of the Lessor’s cash requirements for such year * * * which the number of shares of Lessor allocated to the apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements.” "Cash requirements” are to be set by the board of directors and are to be based on operations, reserves and "payment of obligations, liability and expenses incurred or to be incurred.” The corporation’s bylaws contain similar language vesting the board of directors with authority to set the "cash requirements”.
When a mortgagee, particularly a sophisticated one such as ENY, lends money and enters into a mortgage on a large residential or commercial property the leases are a part of its security against default. The mortgagee’s business judgment is, inter alia, based on its evaluation of the rent roll. All lease terms are carefully scrutinized as part of every lender’s "due diligence” investigation. That means looking at foreseeable changes in the rent roll because of lease provisions, lease renewals, lease expirations, rent escalations and automatic rent increases and decreases.
Fluctuations in the amount of rent, both up and down, are inherent in a cooperative lease. Thus there are concomitant fluctuations in the value of the mortgagee’s security. Variations in value of the security, whether in the rent roll or in the market value of the building, are a recognized business risk inherent in lending money secured by a mortgage on a building owned by a cooperative housing corporation.
Simply put, the setting of the "cash requirements” at a lower figure after default is not a modification of the lease but is a risk that the mortgagee undertook when it agreed to the mortgage.[2] The court must enforce the mortgage by its terms. At least since the decision in Prudence Co. v 160 W. Seventy- *270 Third St. Corp. (260 NY 205 [1932]) the law has been that a receiver in foreclosure is bound by the rent terms in a lease. In Prudence Co. (at 213) the Court of Appeals, in a case involving a cooperative apartment building, held that in the absence of a "collusive or fraudulent lease for an inadequate rental” the receiver cannot have any rights superior to the owning corporation, even though the lease permits a rent that is less than the fair and reasonable rental value. That rule has been continuously followed (Markantonis v Madlan Realty Corp., 262 NY 354, 360 [1933]; Bank of Manhattan Trust Co. v Twenty-one Sixty-six Broadway Corp., 237 App Div 734 [1st Dept 1933]; Central Sav. Bank v Chatham Assocs., 54 AD2d 873, 874 [1st Dept 1976]; New York City Community Preservation Corp. v Michelin Assocs., 115 AD2d 715, 717 [2d Dept 1985]).
Real Property Law § 291-f provides that a mortgagee has a right to rely on the lease terms particularly in the event of a default and foreclosure. The statute was adopted to overrule the New York cases which held that, even after a default by the mortgagor, the mortgagor could alter or even terminate a lease (Poughkeepsie Sav. Bank v R & G Sloane Mfg. Co., 84 AD2d 212, 214; cf., Katzen v Eight-Twenty Park Ave. Corp., 176 Misc 625, affd 262 App Div 838). However, section 291-f has been strictly construed to apply only to matters directly covered by it (Poughkeepsie Sav. Bank v R & G Sloane Mfg. Co., supra).
It may well be that this ruling will make lenders more reluctant to issue mortgages to cooperatives since rental income from proprietary leases may be illusory collateral. But that raises questions for the business world, not this court.[3] ENY argues that the tenants receive a "windfall” because of the reduced rent at the expense of the receiver. That might well be the result. But, the reduction will be short-lived, only from the time of this decision to the sale of the property in foreclosure. The potential harm to the cooperative shareholders, of losing their entire investment because of the mortgage foreclosure is surely a disincentive to needless rent reductions.
The board here correctly noted that the receiver is not *271 permitted to make payments on the defaulted mortgage. The receiver and mortgagee do not contend that the new "cash requirements” are insufficient for the receiver to pay for ongoing services at the building. Thus, the court need not deal with the potential of collusive self-dealing where a board of directors consisting of proprietary lessees reduces the maintenance below a level adequate to pay for essential service. The motion for an injunction to prevent "modification” of the leases under Real Property Law § 259-f is denied. The stay in the order to show cause is vacated.

. In yet another action (State of New York v Chassen, index No. 402637/93, Oct. 25, 1993) Justice Beverly Cohen granted a default judgment which removed certain persons named by the sponsor as officers and directors of the corporation, barred them from running for reelection and permitted named individuals to act on behalf of the corporation.

. Of course, while it is, as a practical matter, unlikely to occur, there is no legal reason why proprietary leases could not be drawn to require that payments on defaulted mortgages must be included within the building’s "cash requirements.” This court does not opine on whether a mortgage entered into after the proprietary leases were executed which purports to *270 limit the cooperative board’s discretion to lower rent would be enforceable, in light of the lease and the bylaws.

. Compare, Bankers Trust Co. v Board of Mgrs. (81 NY2d 1033) where the Court’s only concern was the legislative intent in fixing priorities of liens, not the real estate banking world concern with the result.